IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| WILLIAM H. STEINBRINK, M.D. and<br>PATRICIA M. STEINBRINK, his wife,<br><br>  and<br><br>BAYSIDE OBSTETRICS GYNECOLOGY<br>INFERTILITY, INC. 401(K) PROFIT<br>SHARING PLAN,<br><br>             Plaintiffs,<br><br>  v.<br><br>ROTHSTEIN, KASS & COMPANY, P.C.,<br>B. HAUPTMAN & ASSOCIATES, LLC, and<br>BRUCE A. HAUPTMAN,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 01-382 ERIE |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Robert H. Pees
Lynda R. Stadler
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000

Robert M. Barnes
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, Pennsylvania 15219-6401
(412) 338-5200

*Attorneys for Defendants
B. Hauptman & Associates, LLC and
Bruce A. Hauptman*

Table of Contents

PRELIMINARY STATEMENT.................................................................................1

FACTUAL BACKGROUND................................................................................2

ARGUMENT.............................................................................................5

I.    GAMELAN CAPITAL'S MANDATORY FORUM SELECTION CLAUSE,
      WHICH SELECTS THE DELAWARE COURT OF CHANCERY AS THE
      EXCLUSIVE FORUM OF CHOICE, COMPELS DISMISSAL. ........................5

A.    The Gamelan Capital Limited Partnership Agreement Provides For Exclusive
      Jurisdiction And Venue In The Delaware Court Of Chancery. ................................5

B.    Forum Selection Clauses Are Valid And Enforceable. ...........................................6

C.    No Valid Grounds Exist For Avoiding Enforcement Of The Gamelan Capital
      Forum Selection Clause. ......................................................................7

D.    The Claims Against The BHA Defendants All "Arise Out Of" The Gamelan
      Capital LPA. ..................................................................................8

II.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO JOIN AN INDISPENSABLE PARTY: GAMELAN CAPITAL
      FUND, L.P..................................................................................10

A.    Gamelan Capital Is A "Necessary" Party Pursuant To Federal Rule Of Civil
      Procedure 19(a). ..............................................................................11

B.    Joinder Of Gamelan Capital To This Action Destroys Diversity. ..........................14

C.    Because Gamelan Capital Also Is An "Indispensable" Party Under Federal
      Rule Of Civil Procedure Rule 19(b), The Claims Against The BHA Defendants
      Must Be Dismissed. ..........................................................................14

III.  COUNTS I, II, AND III ALSO SHOULD BE DISMISSED PURSUANT TO
      FED. R. CIV. P. RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM. ..........20

A.    Hauptman Cannot Be Held Individually Liable For The Breach Of Contract
      Claim And, Thus, Count I Must Be Dismissed As To Hauptman........................21

B.    Counts II And III Must Be Dismissed As The "Gist Of The Action" Bars
      Contract Claims That Have Been Repackaged As Tort Claims. ..........................23

IV.    THE FRAUD CLAIM IN COUNT III FAILS TO MEET THE
       PARTICULARITY REQUIREMENTS OF RULE 9(B). ....................................27

CONCLUSION.........................................................................................................31

# TABLE OF AUTHORITIES

## CASES

*In re Advanta Corp.,*
  No. 97-CV-4343, 1998 WL. 387595
  (E.D. Pa. July 9, 1998), *aff'd*, 180 F. 3d 525 (3d Cir. 1999)......................................28

*Bankston v. Burch,*
  27 F.3d 164 (5th Cir. 1994) ..............................................................................16, 18

*Barbuto v. Medicine Shoppe Int'l, Inc.,*
  166 F. Supp. 2d 341 (W.D. Pa. 2001)...............................................................7, 8

*Bhatla v. Resort Dev. Corp.,*
  720 F. Supp. 501 (W.D. Pa. 1989)....................................................................27

*Bremen v. Zapata Off-shore Co.,*
  407 U.S. 1 (1972)...............................................................................................6

*Broussard v. Columbia Gulf Transmission Co.,*
  398 F.2d 885 (5th Cir. 1968) ..........................................................................18

*Browne v. Maxfield,*
  663 F. Supp. 1193 (E.D. Pa. 1987)...................................................................23

*Browne v. Robb,*
  583 A.2d 949 (Del. 1990) ................................................................................27

*Buckley v. Control Data Corp.,*
  923 F.2d 96 (8th Cir. 1991) ............................................................................16

*In re Burlington Coat Factory Sec. Litg.,*
  114 F.3d 1410 (3d Cir. 1997)............................................................................3

*Cabrini Dev. Council, CDC v. LCA-Vision, Inc.,*
  197 F.R.D. 90 (S.D.N.Y. 2000) .......................................................................20

*Camden Sec. Co. v. Lupowitz,*
  500 F. Supp. 653 (E.D. Pa. 1980) ..............................................10, 12, 16, 18, 19

*Carden v. Arkoma Assocs.,*
  494 U.S. 185 (1990)........................................................................................14

*Carnival Cruise Lines v. Shute,*
    499 U.S. 585 (1991) ............................................................................8, 9

*Caudill Seed & Warehouse Co. v. Prophet 12, Inc.,*
    123 F. Supp. 2d 826 (E.D. Pa. 2000) ...............................................26

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,*
    709 F.2d 190 (3d Cir. 1983).............................................................10

*Commonwealth of Pa. v. BASF Corp., et al.,*
    No. 120186, 2001 WL. 1807788
    (Pa. Ct. Comm. Pl. March 15, 2001) ...............................................22

*Continental Ill. Nat'l Bank & Trust Co. v. Hunt Int'l Res. Corp.,*
    Civ. Action Nos. 7888, 7844, 1987 WL. 55826
    (Del Ch. Feb. 27, 1987) ...................................................................29

*Creamer v. Monumental Properties, Inc.,*
    314 A.2d 333 (Pa. Commw. Ct. 1973),
    *aff'd in part, rev'd in part on other grounds by*
    329 A.2d 812 (Pa. 1974) ..................................................................30

*Crescent Int'l, Inc. v. Avatar Communities, Inc.,*
    857 F.2d 943 (3d Cir. 1988)............................................................9, 10

*D.P. Enterprises, Inc. v. Bucks City Community College,*
    725 F.2d 943 (3d Cir. 1984)..............................................................20

*Dayhoff Inc. v. H.J. Heinz Co.,*
    86 F.3d 1287 (3d Cir. 1996) ............................................................6, 8

*Dickson v. Murphy,*
    No. 05-4728, 2006 WL. 2847238
    (3d Cir. Oct. 6, 2006) ...................................................15, 17, 19

*Electron Energy Corp. v. Short,*
    408 Pa. Super. 563, 597 A.2d 175 (1991),
    *aff'd* 533 Pa. 66 (Pa. Super. Ct. 1993).............................................21

*Enza, Inc. v. We The People, Inc.,*
    838 F. Supp. 975 (E.D. Pa. 1993) .......................10, 14, 15, 19, 20

*Etoll, Inc. v. Elias/Savion Adver., Inc.,*
    811 A.2d 10 (Pa. Super. 2002)......................................................23, 24

*Fleetway Leasing Co. v. Wright,*
  697 A.2d 1000 (Pa. Super. Ct. 1997)...................................................................21

*Gardner v. The Calvert,*
  253 F.2d 395 (3d Cir. 1958)...............................................................................22

*Gibbs v. Ernst,*
  647 A.2d 882 (Pa. 1994)...................................................................................27

*HB General Corp. v. Manchester Partners, L.P.,*
  95 F.3d 1185 (3d Cir. 1996)...............................................................................13

*Hart v. Arnold,*
  884 A.2d 316 (Pa. Super. Ct. 2005)...................................................................26

*Hillier,*
  2006 WL. 299053 ..............................................................................................26

*Hillier v. M.I.S.I., L.P,*
No. 0513 *Jan. Term 2004,*
2006 WL. 299053 (Pa. Ct. Comm. Pl. Jan. 27, 2006) ......................................23

*Instrumentation Assoc., v. Madsen Elecs. (Canada),*
  859 F.2d 4 (3d Cir. 1988)...................................................................................7

*Jones v. Weibrecht,*
  901 F.2d 17 (2d Cir. 1990).................................................................................7

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995)..............................................................................6, 7

*Kensworthy v. Hargrove,*
  855 F. Supp. 101 (E.D. Pa. 1994) .....................................................................15

*Kost v. Kozakiewicz,*
  1 F.3d 176 (3d Cir. 1993)...................................................................................20

*Litman v. Prudential-Bache Properties, Inc.,*
  611 A.2d 12 (Del. Ch. 1992)...............................................................................15

*Lynch v. Janson,*
  No. 90-5063, 1990 WL. 188926 (E.D. Pa. Nov. 28, 1990) ..............................29

*Marine Chance Shipping, v. Sebastion,*
  143 F.3d 216 (5th Cir. 1998) .............................................................................10

*Marino v. Cross Country Bank, No. C.A.02-65-GMS,*
  2003 WL. 503257 (D. Del. Feb. 14. 2003) ................................................................23

*Martin v. Lancaster Battery Co.,*
  606 A.2d 444 (Pa. 1992) ................................................................30

*Montgomery v. Fed. Ins. Co.,*
  836 F. Supp. 292 (E.D. Pa. 1978) ................................................................25

*Neyer, Tiseo & Hindo, Ltd. v. Russell,*
  Civ. A. No. 92-2983, 1993 WL. 53579
  (E.D. Pa. March 2, 1993) ................................................................25

*Nowicki v. United Timber Co., No. Civ.A. 99-257,*
  2000 WL. 1239966 (E.D. Pa. 2000) ................................................................22

*Nutt v. A.C. & S., Inc.,*
  466 A.2d 18 (Del. Super. Ct. 1983) ................................................................28, 29, 30

*Omron Healthcare, Inc. v. Maclaren Exports,*
  28 F.3d 600 (7th Cir. 1994) ................................................................9

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,*
  998 F.2d 1192 (3d Cir. 1993) ................................................................3

*People Mortgage Co., Inc. v. Fed. Nat'l Mortgage Ass'n,*
  856 F. Supp. 910 (E.D. Pa. 1994) ................................................................24

*Pittsburgh Constr. Co. v. Griffith,*
  834 A.2d 572 (Pa. Super. 2003) ................................................................23, 25

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
  390 U.S. 102 (1968) ................................................................10, 12

*Ragan Henry Broadcast Group, Inc. v. Hughes, No. Civ. A. 91-CV-6159,*
  1992 WL. 151308 (E.D. Pa. June 19, 1992) ................................................................12, 14, 18

*Ransom v. Marrazzo,*
  848 F.2d 398 (3d Cir. 1988) ................................................................20

*Resolution Trust Corp. v. Farmer,*
  823 F. Supp. 302 (E.D. Pa. 1993) ................................................................20

*Rolo v. City Investing Co. Liquidating Trust,*
  155 F.3d 644 (3d Cir. 1998) ................................................................27

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
  246 F.3d 289 (3d Cir. 2001).............................................................................7

*Smith v. Bader*,
  458 F. Supp. 1184 (S.D.N.Y. 1978)............................................16, 17, 18, 19

*Sprout v. Ellenburg Capital Corp., No. Civ. A. 95C-05-025*,
  1997 WL. 716901 (Del. Super. Aug. 26, 1997)......................................29, i

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).......................................................................................7

*In re Sunrise Sec. Litg.*,
  916 F.2d 874 (3d Cir. 1990).......................................................................15

*Thomas v. Hobbs, No. C.A. 04C-02-010*,
  2005 WL. 1653947 (Del. Super. April 27, 2005) .....................................22

*Violanti v. Emery Worldwide.*,
  847 F. Supp. 1251 (M.D. Pa. 1994) ..........................................................20

*Wallace v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999)............................................................21, 22

*Werner Kammann Machinenfabrik, GmbH v.*
  *Max Levy Autograph, Inc., No. Civ-A 01-1083,*
  2002 WL. 126634 (E.D. Pa. Jan. 31, 2002)..............................................26

## STATUTES

De. Sup. Ct. Civ. R. 9(b) ....................................................................................27

De. Ct. Ch. R. 9(b) .............................................................................................27

15 Pa. Cons. Stat. Ann. § 8591 (same) ..............................................................15

Pa. R. Civ. P. 1019(b) ........................................................................................27

28 U.S.C. § 1404.................................................................................................7

Fed. R. Civ. P. 9(b) ...............................................................................1, 27, 30

Fed. R. Civ. P. 12(b)(6).......................................................................................7

Fed. R. Civ. P. 19.........................................................................10, 11, 12, 13, 14, 15, 18, 19

Fed. R. Civ. P. 19 Advisory Committee Notes.............................................................12, 16

## PRELIMINARY STATEMENT

After this Court's dismissal of Plaintiffs' federal claims, their scramble to remain in this Court is unavailing. First, venue in this Court is improper because Plaintiffs' claims are subject to a mandatory forum selection clause which provides for exclusive jurisdiction in the Delaware Court of Chancery. Second, even if that were not the case, Plaintiffs have failed to join an indispensable party, Gamelan Capital Fund, L.P., with whom they entered into a valid and binding limited partnership agreement that forms the basis for Plaintiffs' claims. Adding Gamelan Capital Fund, L.P. as a party destroys diversity and also mandates dismissal of Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(7) for failure to join an indispensable party.

In addition to jurisdiction in this Court being improper, Plaintiffs' Count I (Breach of Contract) fails to state a claim under Rule 12(b)(6) against Bruce Hauptman as he acted only in his corporate capacity and was not a personal signatory to the contract and, thus, cannot be held individually liable on a breach of contract claim. In addition, Counts II and III (Conversion and Fraud and Self-Dealing) are attempts to repackage the breach of contract claim as tort claims and thus, fail under Pennsylvania's "gist of the action" doctrine. Finally, Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b) and, thus, Count III fails for that reason also.

# FACTUAL BACKGROUND[1]

In 1984, Bruce A. Hauptman ("Hauptman") started B. Hauptman & Associates ("BHA") (collectively with Hauptman, the "BHA Defendants"),[2] a start-up business offering investment management consulting services to small and medium-sized pension plans and high net-worth individuals. Hauptman Aff. ¶ 2. Hauptman is the President of BHA. Second Amended Complaint dated October 16, 2006 ("Second Amended Compl.") ¶ 6.

In 1989, B. Hauptman & Associates decided to create an investment fund, Genesis Capital Fund, L.P. ("Genesis Capital"). Hauptman Aff. ¶ 3. Genesis Capital was structured as a "fund of funds" – a limited partnership that invested in a group of hedge funds. *Id.* In 1997, Gamelan Capital Fund, L.P. ("Gamelan Capital") was formed. *Id.* ¶ 4. Gamelan Capital was structured to enable it to participate in various investment opportunities, including private equity investments. *Id.*

### *Plaintiffs' Investment in Genesis Capital and Gamelan Capital*

Plaintiffs Dr. and Mrs. Steinbrink executed subscription agreements and became limited partners in Genesis Capital in 1990. Second Amended Compl. ¶ 9. Plaintiff Bayside Obstetrics Gynecology Infertility, Inc. 401(k) Profit Sharing Plan became a limited partner in 1992. Second Amended Compl. ¶ 10. Effective as of October 1, 1999, Plaintiffs elected to transfer their entire investment in Genesis Capital to Gamelan Capital. Hauptman Aff. ¶ 5; Second Amended Compl. ¶ 17. Gamelan Capital currently has twenty-four limited partners. Hauptman Aff. ¶ 6. Plaintiffs represent two of those twenty-four limited partners. *Id.*

---

[1] For the purposes of background and to assist the Court in its jurisdictional analysis, we have included certain noncontroversial facts to provide the context of this dispute. For purposes of an analysis under Rule 12(b)(6), we have treated the allegations in the Second Amended Complaint as if they were true facts. We reserve the right to dispute any and all allegations in the Second Amended Complaint.

[2] B. Hauptman & Associates was incorporated in or around 1987 and became B. Hauptman & Associates, Inc. In or around 1999, it was converted to a limited liability corporation and became the current entity, B. Hauptman & Associates, LLC ("BHA"). Affidavit of Bruce A. Hauptman, dated November 18, 2006 ("Hauptman Aff.") ¶ 2.

According to the Second Amended Complaint, in connection with this decision to transfer their investment from Genesis Capital to Gamelan Capital, Plaintiffs and BHA agreed to a written modification of section 5.5(b) of the Gamelan Capital Limited Partnership Agreement ("Gamelan Capital LPA") to provide Plaintiffs with quarterly opportunities to withdraw all or part of their investment.[3]    Second Amended Compl. ¶ 16.  This arrangement did not otherwise modify the withdrawal provisions set forth in section 5.5 of the Gamelan Capital LPA, including the following provisions:

- [T]he General Partner shall be under no obligation to effect sales of partnership assets if the General Partner in its sole discretion determines that such transaction might be detrimental to the interests of the other partners or that such transactions are not reasonably practicable. Hauptman Aff. Exh. A at 26, §5.5(f).

- The General Partner in its sole discretion may suspend any payments to a withdrawing Limited Partner if the effect of such withdrawal would impair the Partnership's ability to pursue its investment objectives. Hauptman Aff. Exh. A at 27, §5.5(g).

Plaintiffs were fully apprised of the potential risks and lack of liquidity with respect to the investments they made in Genesis Capital and Gamelan Capital. *See* Hauptman Aff. Exhs. B at SA-2, SA-3 and C at SA-2, SA-3.  For example, the Subscription Agreements, which Plaintiffs reviewed and signed and which created a binding agreement between Plaintiffs and Gamelan Capital, clearly set forth the risk of the Plaintiffs' investment.  In those Subscription Agreements, Plaintiffs specifically represented and warranted as follows:

- The Subscriber "has such knowledge and experience in financial, tax and business matters as to enable the Subscriber to . . . evaluate the merits and risks of an

---

[3] The Gamelan Capital LPA and the Subscription Agreements signed by Plaintiffs are attached to the Hauptman Affidavit as Exhibits A and B and C, respectively.  These documents create and govern any rights or obligations between the Plaintiffs and the BHA Defendants, and it is well-recognized that courts may freely rely upon documents core to the claims at issue, even if such documents are not attached to the pleadings. *See, e.g., In re Burlington Coat Factory Sec. Litg.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the complaint may be considered without converting a motion [to dismiss] into one for summary judgment") (internal citations and quotations omitted); *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that court may consider document that defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based upon the document).

investment in the Partnership." Hauptman Aff. Exh. B at SA-2, § (e); *see also id.* Exh. C at SA-2, § (e).

- The Subscriber "recognizes that there is not now any public market for L.P. interests of the Partnership and that such a market is not expected to develop; accordingly, *it may not be possible for the Subscriber readily to liquidate the Subscriber's interest in the Partnership* . . . The Subscriber has no need for immediate liquidity . . . ." Hauptman Aff. Exhs. B at SA-3, § (h) and C at SA-3, § (h) (emphasis added).

In addition, Plaintiffs are bound by the Gamelan Capital LPA which provides for any disputes to be resolved by the Delaware Court of Chancery. *See* Hauptman Aff. Exh. A at 37, §8.5. In addition, the Gamelan Capital LPA governs the issues raised in Plaintiffs' Second Amended Complaint, specifically addressing, for example, Management Fees (§ 4.2), Expenses (§ 4.3), Duty of Care (§ 4.6), Withdrawal of Interests of Partners (§ 5.5), and Valuation of Partnership Assets and Interests (§ 7.2). *See, e.g.,* Hauptman Aff. Exh. A. at 16-18, 20-21, 25-27, 30-32.

### The Bottom Falls Out of the Market

In 2000, investments in various markets plunged as the once-booming Internet, technology and telecommunications sectors plummeted, causing overall market volatility and devaluing many investments.[4] Gamelan Capital was no exception to this general market trend, recording a 25% loss in 2000. In 2001, market losses continued as the market struggled with high volatility and the devaluation of technology-related businesses. In Spring 2001, Plaintiffs requested that they be allowed to withdraw their investment. Second Amended Compl. ¶ 18. At the time of Plaintiffs' request, Gamelan Capital lacked liquid funds to pay out Plaintiffs' interest in a manner that would not detrimentally harm other limited partners. *See generally* Hauptman Aff. Exh. A at 26, 27, § 5.5(f) and (g).

---

[4] *See, e.g.*, Erin E. Arvedlund, *E-gregious! 2000 Scoreboard*, Barron's Online, January 1, 2001.

Unhappy with their high risk investment losses and agreed-upon restrictions in the Gamelan Capital LPA, Plaintiffs now seek to assert claims that are nothing more than attempts to use the BHA Defendants as "risk insurance" for investment losses caused by the Internet-collapse of 2000/2001.

## ARGUMENT

**I.    GAMELAN CAPITAL'S MANDATORY FORUM SELECTION CLAUSE, WHICH SELECTS THE DELAWARE COURT OF CHANCERY AS THE EXCLUSIVE FORUM OF CHOICE, COMPELS DISMISSAL.**

    **A.    The Gamelan Capital Limited Partnership Agreement Provides For Exclusive Jurisdiction And Venue In The Delaware Court Of Chancery.**

Venue is improper in the Western District of Pennsylvania as the parties specifically agreed to litigate any disputes arising from the Gamelan Capital LPA in another forum, namely the Delaware Court of Chancery.  Section 8.5 of the Gamelan Capital LPA provides in relevant part:

> GOVERNING LAW: This Agreement, and the rights of the Partners hereunder, shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to the conflict of laws rule thereof. ***The parties hereby consent to exclusive jurisdiction and venue for any action arising out of this Agreement in the Delaware Court of Chancery.***

Hauptman Aff. Exh. A at 37, § 8.5 (emphasis added).[5]

All Plaintiffs explicitly agreed to be bound by the Gamelan Capital LPA by executing Gamelan Capital's Subscription Agreement, which provides:

> Execution of this Signature Page evidences the Subscriber's agreement to be bound by this Subscription Agreement and the Partnership Agreement of Gamelan Capital Fund, L.P.

---

[5] Because this clause also contains a choice of law provision selecting Delaware law, this Memorandum of Law in support of the BHA Defendants' Motion to Dismiss cites to both Delaware and Pennsylvania law which both uniformly support dismissal of the claims against the BHA Defendants for the reasons set forth herein, with the exception of Section III.B as the "gist of the action" doctrine is grounded in Pennsylvania law and is provided here as an alternative argument in the event that the Court determines that the choice of law and/or forum selection provision are not applicable.

Hauptman Aff. Exhs. B at SA-6 and C at SA-6.

Because Plaintiffs are bound by the Gamelan Capital LPA, including its forum selection clause, all of Plaintiffs' claims are required to be litigated in the Delaware Court of Chancery and, thus, venue in this district is improper.

### B.    Forum Selection Clauses Are Valid And Enforceable.

Federal law determines the effect given to forum selection clauses. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. . . . [b]ecause '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature. . . .'") (citations omitted).  Under federal law, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 10 (1972) (enforcing clause providing for the resolution of any disputes before the London Court of Justice) (citations omitted).  A forum selection clause is only "unreasonable" where a party can make a strong showing that either the selected forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court" or that the clause was procured through fraud or overreaching.  407 U.S. at 15, 18.  Thus, except in narrow circumstances, federal courts, including those in this Circuit, will give full effect to forum selection clauses providing for exclusive venue in another jurisdiction. *See, e.g., Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1298 (3d Cir. 1996) (finding plaintiff bound by forum selection clause providing for dispute to be litigated in Italy).

Where the forum selection clause provides for exclusive jurisdiction in a non-federal forum, courts in this Circuit and others will dismiss the case without prejudice except in those

rare instances where doing so would not be in the interest of justice.[6] *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) ("When a forum selection clause specifies a non-federal forum . . . it seems the district court would have no choice but to dismiss the action so that it can be filed in the appropriate forum . . . ."); *Instrumentation Assoc., v. Madsen Elecs. (Canada)*, 859 F.2d 4 (3d Cir. 1988) (holding that the flexible broad-based balancing standard does not apply when clause designates forum to which transfer is not possible, and affirming dismissal pursuant to Fed. R. Civ. P. 12(b)(6)); *see also Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) ("[B]road based balancing is not appropriate where, as here, a party seeks to have an action dismissed or remanded to state court . . . on the basis of a forum selection clause that purports to preclude litigation from a venue other than a specific state court."); 17 Moore's Federal Practice 3d, 111.04[4][c] (3d Ed. 1997) (where a forum selection clause designates a state or foreign forum, "only a motion to dismiss is available to enforce the clause because there is no federal forum to which transfer may be made to give effect to the clause").

### C.    No Valid Grounds Exist For Avoiding Enforcement Of The Gamelan Capital Forum Selection Clause.

The burden is on the plaintiff, not the defendant, to demonstrate that a forum selection clause is not binding. *Jumara*, 55 F.3d at 879. Moreover, the plaintiff may not contest the validity of a forum selection clause by questioning the enforceability of the entire agreement, "[but] must show that the clause itself was the product of fraud or coercion." *Barbuto v. Medicine Shoppe Int'l, Inc.*, 166 F. Supp. 2d 341, 346 (W.D. Pa. 2001) (Cohill, J.) (citations omitted). The fact that there may not have been actual negotiations with respect to the clause

---

[6] If the forum selection clause points to another federal venue, courts look to 28 U.S.C § 1404 to determine whether the transfer motion should be granted, and apply a discretionary "broad-based balancing" standard to determine whether to give effect to the forum selection clause. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *Jumara*, 55 F.3d 873 (forum selection clause provided that action could be brought in any court, state or federal, in Luzerne County).

will not render it invalid, nor would the fact that the plaintiff is an individual who was not represented by counsel at the time the agreement was formed. *Id.* Further, mere inconvenience of having to litigate claims in forum not of their choosing would not be reason enough to avoid enforcement of the parties' forum selection clause. *See Dayhoff*, 86 F.3d at 1298 ("It would be patently unfair to allow Plaintiff to avoid the mandates of a forum selection clause due to inconvenience because we would merely be shifting the burden of inconvenience to the other party . . . .") (citation omitted); *Barbuto*, 166 F. Supp. 2d at 348-49 (additional financial burden of litigating in remote forum does not suffice to show that plaintiffs would be deprived of day in court); *see also Carnival Cruise Lines v. Shute*, 499 U.S. 585, 594 (1991) ("Florida is not a 'remote alien forum' [for respondents who were residents of the] State of Washington"). Moreover, even the fact that a dispute may have a connection to the Western District of Pennsylvania would not be sufficient to undermine the enforceability of the forum selection clause. *Dayhoff*, 86 F.3d at 1298. This is even more appropriate where, as here, there are no remaining federal claims that would potentially argue for jurisdiction in federal as opposed to state court. Tellingly, despite having this issue raised in the BHA Defendants' prior motion to dismiss, nowhere in their Second Amended Complaint do Plaintiffs allege that the mutually-agreed upon forum selection clause in the Gamelan Capital LPA is invalid or not applicable. *See generally* Second Amended Complaint. Thus, Plaintiffs utterly fail to carry their burden of proving that the forum selection clause is not binding.

### D.     The Claims Against The BHA Defendants All "Arise Out Of" The Gamelan Capital LPA.

Because the Gamelan Capital LPA contains a valid and enforceable forum selection clause and Counts I, II, and III all "arise out of" the Gamelan Capital LPA, those Counts must be dismissed in favor of proceeding in the Delaware Court of Chancery. Count I alleges breach of

the Gamelan Capital LPA. *See* Second Amended Compl. ¶ 22-25. In addition, Counts II and III, even though couched as torts, also specifically arise out of the Gamelan Capital LPA as they involve the interpretation of rights and responsibilities of the parties under the Gamelan Capital LPA. *See Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (per curiam) ("Although only one of [plaintiff's] claims is based on a breach of contract theory, all of them involve allegations arising out of the agreement implicating its terms."). Indeed, the gravamen of Plaintiffs' Second Amended Complaint is that the BHA Defendants refused to allow their withdrawal from the partnership, misvalued certain private placement investments, and charged excessive management fees and travel expenses to the detriment of Plaintiffs. *See* Second Amended Compl. ¶¶ 27-32, 34-37. There can be no question that such claims – which are dependent on construction of many of the Gamelan Capital LPA's provisions, including Withdrawal of Interests of Partners (§ 5.5), Valuation of Partnership Assets and Interests (§ 7.2), Duty of Care (§ 4.6), Management Fees (§ 4.2), and Expenses (§ 4.3) – arise out of the Gamelan Capital LPA. *See* Hauptman Aff. Exh. A at 16-18, 20-21, 25-27, 30-32; *see also Omron Healthcare, Inc. v. Maclaren Exports,* 28 F.3d 600, 603 (7th Cir. 1994) ("[A]ll disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement.").

Even if Plaintiffs adequately alleged Counts II and III as torts (rather than, as here, simply repackaging breach of contract claims), that would not be reason to disregard the forum selection clause. *See, e.g., Carnival Cruise Lines, Inc.*, 499 U.S. at 587-88 ("[A]ll disputes and matters whatsoever arising under, in connection with or incident to this Contract" included a negligence (slip and fall) cause of action); *Crescent,* 857 F. Supp. at 944 (forum selection clause providing for "any litigation upon any of [agreement's] terms" to be maintained in Miami

required dismissal of RICO, fraud, unfair competition and tortious interference claims because the claims arose "out of the contractual relation and implicate the contract's terms."); *Marine Chance Shipping, v. Sebastion*, 143 F.3d 216, 220 (5th Cir. 1998) ("[A]ny and all disputes or controversies arising out of or by virtue of this [employment] Contract" included tort claim arising during course of employment). As a general matter, a plaintiff cannot artfully avoid a forum selection clause by "pleading alternate non-contractual [claims] . . . if the claims asserted arise out of the contractual relationship and implicate the contract's terms." *Crescent*, 857 F.2d at 944; *see also Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain.")

## II.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY: GAMELAN CAPITAL FUND, L.P.

This case also must be dismissed for Plaintiffs' failure to join an indispensable party – Gamelan Capital. The question of joinder in a diversity case is one of federal law. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968). On a motion to dismiss for failure to join an "indispensable party" the court must first determine whether the absent party is "necessary" and, if the absent party is but cannot be joined for jurisdictional or other reasons, the court must determine whether in equity and good conscience the action should be dismissed because the absent party is "indispensable." Fed. R. Civ. Pro. 12(b)(7), 19 (a, b); *see Camden Sec. Co. v. Lupowitz*, 500 F. Supp. 653, 655 (E.D. Pa. 1980) (dismissing action for failing to join partnership which was an indispensable party).[7] Application of Rule 19 to the facts of this case clearly demonstrates that Gamelan Capital is both a necessary and

---

[7] The burden at all times is on the Plaintiffs to demonstrate federal jurisdiction, and thus it is their burden to prove that Gamelan Capital is dispensable. *See Enza, Inc. v. We The People, Inc.*, 838 F. Supp. 975, 978 (E.D. Pa. 1993). As set forth in this Section II, that burden simply cannot be met in this case.

indispensable party whose joinder divests the Court of diversity jurisdiction and mandates dismissal of Counts I, II, and III of the Second Amended Complaint.

**A.    Gamelan Capital Is A "Necessary" Party Pursuant To Federal Rule Of Civil Procedure 19(a).**

Rule 19(a) provides that an absent party is "necessary" if either "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. Pro. 19(a). This provision is deliberately disjunctive so that if any provision is satisfied, the absent party is a necessary party who should be joined if possible. *See id.* In this case, all of the alternative provisions of Rule 19(a) are satisfied.

Pursuant to Rule 19(a)(1), the present parties will be denied complete relief if Gamelan Capital is not joined. Plaintiffs essentially seek a return of the funds they invested in Gamelan Capital, which is an obligation of the partnership, not an obligation of BHA or Hauptman.[8] Indeed, Section 4.6(a) of the Gamelan Capital LPA specifically provides that BHA and Hauptman "shall not be liable to the Partnership or *any of its Limited Partners* for any loss or damage occasioned by acts or omissions in the performance of its services under this Agreement, unless such loss or damage is due to gross negligence, willful misconduct or bad faith of the General Partner . . . ." Hauptman Aff. Exh. A at 20, § 4.6(a) (emphasis added). Because Plaintiffs' claims essentially seek disbursement of partnership assets, Gamelan Capital's presence is necessary to accord any relief, especially since Gamelan Capital will not be bound by

---

[8] As set forth *infra* in Section III.A, Hauptman is not individually liable on what is essentially a breach of contract claim in any event.

any judgment rendered in its absence. *See Provident Tradesmen's Bank and Trust Co.,* 390 U.S. at 105 ("Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered."). Moreover, without the addition of Gamelan Capital as a party, the rights and obligations of BHA and Hauptman cannot be fully resolved as they may be entitled to both reimbursement of legal fees and indemnification. *See* Hauptman Aff. Exh. A at 17-18, §§ 4.3(b)(v) and 4.6 (a)-(b). Thus, complete relief simply cannot be accorded without Gamelan Capital.

Gamelan Capital also is a necessary party pursuant to Rule 19(a)(2)(i) which looks at whether the absent party can claim an interest in the litigation (independent of the named defendant's interest) such that a judgment in its absence will impede its ability to protect that interest. *See* Fed. R. Civ. P. 19 Advisory Committee Notes. The claims that have been made go squarely to the agreement between Gamelan Capital and its partners, and Gamelan Capital clearly has a significant interest in the interpretation of the Gamelan Capital LPA. *See Ragan Henry Broadcast Group, Inc. v. Hughes,* No. Civ. A. 91-CV-6159, 1992 WL 151308, at *2 (E.D. Pa. June 19, 1992) (citations omitted) (recognizing general rule that where rights sued upon arise from a contract, "all parties thereto must be joined"). In addition, Plaintiffs allege damage to Gamelan Capital's assets (due to alleged mismanagement and misrepresentation and excessive fees and expenses) and thus, Gamelan Capital – the party allegedly damaged by the claims – clearly has an interest in this litigation. *See Camden,* 500 F. Supp. at 655 (dismissing for failing to join partnership which is an indispensable party in action alleging negligence by partner that damaged partnership and interests therein). Moreover, Plaintiffs and BHA are not the only partners to the Gamelan Capital LPA; indeed, there are twenty-two other limited partners to whom Gamelan Capital has rights and obligations and whose interests will not be represented in

this litigation other than if Gamelan Capital itself is named in the litigation. This is particularly important as Plaintiffs seek relief that would come directly from the partnership assets and that would deplete partnership funds that then would not be available to satisfy potential claims of other partners.[9] Finally, Gamelan Capital itself is required pursuant to the Gamelan Capital LPA to pay legal fees and to indemnify BHA and Hauptman under certain circumstances and, thus, has a significant interest and potential legal exposure in this action.

Rule 19(a)(2)(ii) also mandates finding Gamelan Capital a necessary party. Under 19(a)(2)(ii), the court considers whether the current parties will be subject to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" as a result of not joining the absent party. Fed. R. Civ. P. 19(a)(2)(ii). In this case, the BHA Defendants would be subject to the risk of multiple or inconsistent obligations if this litigation were to go forward as they could be sued by any of the other limited partners on the precise claims raised herein. In addition, without Gamelan Capital, this action cannot resolve claims the BHA Defendants may have against Gamelan Capital or claims Gamelan Capital may have against them that would then have to be resolved at a later date and in a different forum. Finally, if Plaintiffs ultimately are not happy with the results of this action, they would still be able to bring claims against Gamelan Capital which again would expose BHA and Hauptman to litigation and potential liability as they would have to defend those claims as the General Partner of Gamelan Capital and President of BHA, respectively. Accordingly, Rule 19's specific purpose of "avoid[ing] unnecessary multiple litigation, ...provid[ing] complete relief to parties before court, and ... protect[ing] rights and

---

[9] It is for this reason that *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d Cir. 1996) is inapposite. In *HB General*, the court found that the partnership itself was not an indispensable party but only because, in that case, all of the limited partners and the general partners were before the court and, thus, the partnership was effectively represented by its members. *Id.* ("we hold that, *because all of the partners of this small limited partnership are before the district court*, joinder of the partnership entity is not required") (emphasis added). In the present case, almost all of the limited partners (22 out of the 24 limited partners) are not before the court and, in

interests of absent parties" would be completely thwarted in this action if Gamelan Capital is not joined. *See Ragan Henry Broadcast Grp., Inc.*, 1992 WL 151308, at *2 (internal quotations and citations omitted).

### B.    Joinder Of Gamelan Capital To This Action Destroys Diversity.

For diversity purposes, a limited partnership is considered to be a citizen of each state in which its partners, general and limited, are citizens. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). Thus, Gamelan Capital would be considered a citizen of Pennsylvania since Plaintiffs are citizens of Pennsylvania. *See id.* Accordingly, joinder of Gamelan Capital destroys diversity jurisdiction in this case and requires dismissal of the Second Amended Complaint. *See id; Enza, Inc.*, 838 F. Supp. at 977 ("In order to sustain federal jurisdiction based on diversity, all of the parties on one side of the controversy must be citizens of different states from all the parties on the other side.")

### C.    Because Gamelan Capital Also Is An "Indispensable" Party Under Federal Rule Of Civil Procedure Rule 19(b), The Claims Against The BHA Defendants Must Be Dismissed.

Where a party is necessary to the action but their joinder will destroy diversity jurisdiction, the court determines whether "in equity and good conscience" the action should proceed. Fed. R. Civ. P. 19(b). The factors to be considered by the court in determining if dismissal is appropriate include: 1) the extent that a judgment rendered in the person's absence might prejudice current parties, 2) the extent that protective provisions can be incorporated into the judgment to lessen or avoid any prejudice, 3) whether the judgment rendered in the person's absence would be adequate, and 4) whether the plaintiff would have an adequate remedy if the

---

addition to the possible prejudice to their rights, the partnership itself faces prejudice as it could be exposed to future litigation on these same issues, as set forth in this Section II.

action were dismissed. *See* Fed. R. Civ. P. 19(b); *Dickson v. Murphy,* No. 05-4728, 2006 WL 2847238, at *3-4 (3d Cir. Oct. 6, 2006).

A necessary predicate to undertaking this Rule 19(b) analysis is looking at the essence of the claims. Of critical importance in this case is that the injuries complained of are to the partnership (and then consequently to Plaintiffs' investment therein). *See Enza, Inc.,* 838 F. Supp. at 978-79 (finding absent corporation was an indispensable party to fraud and breach of contract claims as "all the actions of fraud alleged in the complaint occurred on behalf of, or in the name of," the corporation and contract was between corporation and plaintiff). The Second Amended Complaint's plain wording clearly illuminates that any alleged injury is first to the partnership itself:

- Alleging that "The defendants did not operate the [Gamelan Capital] fund in the best interests of [the limited partners] nor in a professional manner [but] . . . [r]ather, the fund was operated to benefit the defendants. Second Amended Compl. ¶ 24.

- Alleging that the BHA Defendants engaged in "fraudulent activity, self-dealing and mismanagement" which included
  - Dissemination of false and misleading financial statements which overstated investment values and omitted material disclosures;
  - Charging excessive and unreasonable management fees;
  - Charging excessive travel and entertainment expenses;
  - Engaging in a course of conduct designed to falsely inflate the paper value of the funds while directing assets of the fund to the BHA Defendants. *See* Second Amended Compl. ¶ 24, 34-37.

That the claims are essentially derivative in nature is an important overlay to finding that Gamelan Capital is an indispensable party.[10] Where the claims seek to redress injuries to the

---

[10] Under Delaware and Pennsylvania law, claims that allege a diminution of the partner's investment and thus affect all of the partners on a pro rata basis are considered derivative claims. *See, e.g., Litman v. Prudential-Bache Properties, Inc.,* 611 A.2d 12, 16 (Del. Ch. 1992) (finding claims to be derivative in nature where alleged harm – diminution in value of the interest and diminished distributions to the unit holders – "flow[ed] from the damage inflicted directly on the Partnership" and damaged plaintiffs "only to the extent of their proportionate interest in the Partnership"); *Kensworthy v. Hargrove,* 855 F. Supp. 101, 106 (E.D. Pa. 1994) (claim that wrongs damaged limited partner by reducing the value of his limited partnership interest is required to be brought derivatively); *see also In re*

partnership (and then consequently to the partners' interests therein), the overwhelming authority finds that a limited partnership is an indispensable party. *See, e.g., Camden Sec. Co.*, 500 F. Supp. at 655 (holding that complete relief cannot be granted without making the partnership a party because, if the allegations of negligence and mismanagement are true, it is the partnership that has been damaged); *Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994) (in case by limited partner against general partner where claims alleged, *inter alia,* fraud, mismanagement and waste of partnership assets, and improper expenditures, court found the partnership to be an indispensable party); *Smith v. Bader*, 458 F. Supp. 1184, 1187 (S.D.N.Y. 1978) (court found partnership to be an indispensable party in an action by a limited partner against a general partner, alleging, *inter alia*, self-dealing and conversion); *Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991) (finding partnership indispensable in action where the alleged injury was suffered directly by the partnership and only indirectly by the partners by way of the diminution of their investment in the partnership). In addition to the nature of the claims mandating the finding that Gamelan Capital is an indispensable party, each of the four considerations set forth in Rule 19(b) also compel the finding of indispensability.

The first consideration looks at whether the current parties would be adversely affected by a judgment rendered without the absent party, and, in many respects, overlaps with the analysis under Rule 19(a)(1). *See* Fed. R. Civ. P. 19 Advisory Committee Notes. This factor

---

*Sunrise Sec. Litig.*, 916 F.2d 874, 886 (3d Cir. 1990) (diminution in share value is an injury to the corporation and shareholders generally, not to the individual shareholders). The fact that the claims are derivative also compels dismissal of the Second Amended Complaint due to Plaintiffs' failure to make a demand on the general partner to bring the claims at issue. *See* Del. C. 17-1001 (allowing limited partner to bring a derivative claim only if "general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed"); 15 Pa. Cons. Stat. Ann. § 8591 (same); *see, e.g., Litman*, 611 A.2d at 17 (dismissing action because plaintiffs failed to make a demand as required by the Limited Partnership Act, finding that "they lack standing to prosecute this action"). Nowhere in Plaintiffs' Second Amended Complaint do they allege, "with particularity," or at all, as required by Delaware law, "the effort . . . of the plaintiffs to secure initiation of the action by a general partner or the reasons for not making the effort." *See* Del. C. 17-1003. Accordingly,

weighs in favor of finding Gamelan Capital indispensable for the reasons set forth above, namely that the BHA Defendants would be prejudiced by any judgment as any amounts found owing likely would be an obligation of the absent partnership and the BHA Defendants' claims for legal fees and indemnification would be unresolved; similarly, Plaintiffs, even if they were to prevail, may not be able to recover as it likely would be the partnership itself that would be required to satisfy any claim for withdrawal of Plaintiffs' investment. *See supra* Section II.A.

The second consideration also finds Gamelan Capital to be "indispensable" as it would be exceedingly difficult to fashion relief to lessen future prejudice. Because Gamelan Capital and the other twenty-two limited partners are not before the court, there would be no way to protect their interests in this litigation. Nor would there be any way to prevent the other limited partners from bringing claims against Gamelan Capital, BHA or Hauptman on the same basis as the claims herein. *See Dickson*, 2006 WL 2847238, at *4 (court considering this precise issue in the context of an absent corporate entity found that it could not lessen the prejudice against the named party, the controlling shareholder, because the absent corporate entity was not solely owned and it could not enjoin the other shareholders from bringing derivative claims against him). Moreover, as set forth above, this action could seriously deplete partnership assets that then would not be available to satisfy claims of the other twenty-two limited partners. Without Gamelan Capital's participation as a party in this action, there would be no way for the Court to fashion a judgment that would lessen or avoid this potentially devastating result. *See, e.g., Smith*, 458 F. Supp. at 1187 (finding that limited partnership was an indispensable party to an action where the requested relief would have a direct effect on the partnership and its assets). Moreover, there is no way to fashion relief to lessen the prejudice to Gamelan Capital itself as

---

Plaintiffs' Counts I, II, and III, which are all derivative in nature, should be dismissed as Plaintiffs lack standing to assert these claims.

the ultimate outcome will influence its indemnification obligations, its requirement to pay legal fees, and its obligation to potentially pay any judgment ordered. *See Bankston*, 27 F.3d at 168 (finding partnership to be indispensable in case involving claims of fraud, mismanagement and excessive expenses against general partner as judgment would prejudice absent partnership's rights and shaping of relief provided inadequate protection to the partnership's interest).

The third consideration (which overlaps with the analysis under Rule 19(a)(1)) also compels the finding that Gamelan Capital is indispensable as an adequate judgment cannot be rendered in its absence, for the reasons previously noted above in the discussion regarding Rule 19(a)(1). Because of the inability of this Court to adjudicate the rights of all concerned parties, a decision to continue with the case in this forum would "begin rather than conclude litigation." *See Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 888 (5th Cir. 1968); *see also Ragan Henry Broadcast Group, Inc. v. Hughes*, Civ. A. No. 91-CV-6157, 1992 WL 151308 (E.D. Pa. June 19, 1992) ("[B]ecause [the absent] entities were parties to the contract at the core of this dispute and because their non-joinder could result in redundant and inconsistent litigation, they should be joined as indispensable parties under Rule 19."); *Camden*, 500 F. Supp. at 655 (dismissing for failing to join partnership which is an indispensable party because, *inter alia,* the court found that it could not formulate a verdict or judgment because it cannot ascertain the exact amount of defendant's potential financial obligations to the partnership or the partnership's obligations to the plaintiff).

For example, in *Smith v. Bader*, 458 F. Supp. 1184, 1187 (S.D.N.Y. 1978), the court found the partnership to be an indispensable party in an action by a limited partner against a general partner, alleging self-dealing and conversion. The court found that the partnership had the primary interest in the assets of the partnership and that the relief sought by the plaintiff

18

would have a direct effect on the partnership and its assets. *Id.* at 1187. The court reasoned that the "protection of [the partnership's'] interests may be impeded in [its] absence . . . since both the plaintiffs and defendants are necessarily concerned with protecting their own interests, which may not, in all instances, coincide with those of the Partnership. In addition, the defendants may be open to double, multiple or otherwise inconsistent obligations since plaintiffs do not represent all the limited partnership interests." *Id.*

Finally, the fourth consideration also compels finding Gamelan Capital indispensable. If this case is dismissed, Plaintiffs have an adequate remedy in state court on their state claims of breach of contract, conversion and fraud. *See Enza, Inc.*, 838 F. Supp. at 978 (dismissing for failure to join indispensable party because, *inter alia*, plaintiffs may pursue an adequate remedy in state court and the parties will not be prejudiced in doing so, particularly given that the case is in an early pretrial posture unlike other cases that have dismissed nondiverse but necessary parties to maintain lower court judgments). Not only do Plaintiffs have an adequate remedy in state court, but as set forth in Section I, *supra*, Plaintiffs' claims are actually required to be litigated in state court, namely, the Delaware Court of Chancery, pursuant to the mandatory forum selection clause, thus causing this factor to require dismissal. *See Dickson*, 2006 WL 2847238 (dismissing for failure to join indispensable parties, in part, due to fact that "it is clear that the North Carolina courts would be an appropriate forum" given that the contracts at issue provide that North Carolina law applies and one of the contracts provides that any lawsuits should be brought in North Carolina).

As the foregoing demonstrates, application of the Rule 19(b) factors compels the finding that Gamelan Capital is an indispensable party. Accordingly, Counts I, II, and III must be dismissed. *See, e.g., Camden,* 500 F. Supp. at 655 (finding partnership indispensable where,

*inter alia*, it was partnership that ultimately was damaged, it would be "impossible to formulate a verdict and judgment," and adequate relief can be obtained in state court); *Enza, Inc.*, 838 F. Supp. at 978 (finding partnership to be indispensable because, *inter alia*, all of the allegations occurred "on behalf of, or in the name of, the partnership," any judgment rendered would be inadequate to protect the partnership and the defendants who were not parties to the partnership agreement, and adequate relief was available in state court); *Cabrini Dev. Council, CDC v. LCA-Vision, Inc.*, 197 F.R.D. 90, 95 (S.D.N.Y. 2000) (finding limited liability company was an indispensable party because, *inter alia*, company was "a separate legal entity with separate rights and obligations from its members . . . [and] presence of two of its three members . . . is insufficient to protect its interest," company had interest in recovering sums owed by defendant member, judgment rendered in plaintiff's favor would be prejudicial to company, and plaintiff had an adequate remedy in state court).

### III.    COUNTS I, II, AND III ALSO SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

Dismissal of Plaintiffs' Second Amended Complaint is required pursuant to Rule 12(b)(6) where "the facts alleged in the complaint, even if true, fail to support the . . . claim." *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). In making that determination, the Court must accept as true Plaintiffs' well-pleaded factual allegations, and draw from them all reasonable inferences favorable to plaintiffs. *D.P. Enterprises, Inc. v. Bucks City Community College*, 725 F.2d 943, 944 (3d Cir. 1984). The Court is not required, however, to accept as true unwarranted factual inferences, *Resolution Trust Corp. v. Farmer*, 823 F. Supp. 302, 305 (E.D. Pa. 1993), nor is it required to accept legal conclusions alleged or inferred from the facts. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Violanti v. Emery Worldwide.*, 847 F. Supp. 1251,

1255 (M.D. Pa. 1994) ("[c]onclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true").

> **A.** **Hauptman Cannot Be Held Individually Liable For The Breach Of Contract Claim And, Thus, Count I Must Be Dismissed As To Hauptman.**

>> **1.** **Hauptman Cannot Be Held Liable For Breach Of The Gamelan Capital LPA As He Is Not A Party To The Contract.**

"[I]t is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Electron Energy Corp. v. Short*, 408 Pa. Super. 563, 571, 597 A.2d 175, 178 (1991), *aff'd* 533 Pa. 66 (Pa. Super. Ct. 1993) (holding that corporate president cannot be liable for breach of contract where he is not a party to the contract); *see also Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. Ct. 1997) ("a person who is not a party to a contract cannot be liable for breach by one of the parties to a contract"); *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to the contract may be sued for breach of that contract."). Plaintiffs, in their pleadings before this Court, acknowledge that Hauptman is not a party to the Gamelan Capital LPA. *See* Plaintiffs' Response to Motions to Dismiss Filed by Rothstein, Kass & Company, P.C. and B. Hauptman Associates, LLC and Bruce A. Hauptman, dated April 26, 2002, at 43 (admitting that "none of the defendants but for B. Hauptman & Associates are even parties to the Limited Partnership Agreement"). Accordingly, there simply is no basis to hold Hauptman liable for a breach of the Gamelan Capital LPA.

>> **2.** **Hauptman Also Cannot Be Held Liable For Breach Of Contracts That He Entered Into Only In His Corporate Capacity.**

It also is black letter law that a contract with a legal entity, such as a partnership, 'is the contract of the legal entity of the artificial being . . ., and not the contract of the individual members" and that "one who deals with a corporation, knowing it to be such, cannot enforce an

individual liability against the officers or agents who act for the corporation." *Bala Corp. v. McGlinn*, 144 A. 823, 824 (1929); *Ervin v. First Am. Mktg. Corp.*, No. 05-184, 2006 WL 2456470, at *3, (E.D. Pa. Aug. 21, 2006) ("corporate officers are not personally liable for contracts entered into by the corporate entities unless they specifically agree to do so in their individual capacities . . . ."); *see also Wallace*, 752 A.2d at 1180 ("Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."); *Thomas v. Hobbs*, No. C.A. 04C-02-010, 2005 WL 1653947, at *2 (Del. Super. April 27, 2005) (court finds no personal liability for officer of limited liability company for breach of contract claims).

Thus, in the present case, Hauptman, who acted only in his capacity as President of BHA, cannot be found individually liable on the breach of contract claim relating to the Gamelan Capital LPA or any modification thereof. He did not enter into any agreements in his individual capacity or hold himself out as acting other than as a corporate officer of BHA. The fact that Hauptman is the majority owner of BHA does not alter the fact that he cannot be found personally liable on the breach of contract claims. *See Gardner v. The Calvert*, 253 F.2d 395, 398 (3d Cir. 1958) (no individual liability for damages on breach of contract claim even where individual owned 100% of the stock of the corporate entity); *Nowicki v. United Timber Co.*, No. Civ.A. 99-257, 2000 WL 1239966, at *7 (E.D. Pa. 2000) (finding no individual liability of President even where individual was the sole owner of the stock of the corporate entity and even though he omitted to reference his title and the organization on the amendment to the agreement). Because no individual liability may be found against Hauptman on the breach of contract claim, Count I should be dismissed with respect to Hauptman. *See Commonwealth of Pa. v. BASF Corp., et al.*, No. 120186, 2001 WL 1807788, at *13-14 (Pa. Ct. Comm. Pl. March

15, 2001) (dismissing breach of contract claim against individual defendants who were acting as representatives of the company); *Marino v. Cross Country Bank*, No. C.A.02-65-GMS, 2003 WL 503257, at *7 (D. Del. Feb. 14. 2003) (dismissing breach of contract claims against corporate officer because "[i]t is well-established that directors and officers are not personally liable on contracts signed by them on behalf of the corporation unless they purport to bind themselves individually").

**B.    Counts II And III Must Be Dismissed As The "Gist Of The Action" Bars Contract Claims That Have Been Repackaged As Tort Claims.**

The "gist of the action" doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002); *see also Browne v. Maxfield*, 663 F. Supp. 1193, 1201 (E.D. Pa. 1987) ("Pennsylvania courts, state and federal, have consistently rejected tort remedies for conduct that is remediable as a breach of contract."); *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. 2003) (citation omitted) ("To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion in our well-settled forms of actions."). Specifically, the gist of the action doctrine bars tort claims where (1) the claims arise solely from a contract between the parties, (2) the duties allegedly breached were created and grounded in the contract, (3) the liability stems from the contract, or (4) the tort claim essentially duplicates a breach of contract claim or the success of the tort claim is wholly dependent on the terms of a contract. *Etoll*, 811 A.2d at 19; *Hillier v. M.I.S.I., L.P*, No. 0513 Jan. Term 2004, 2006 WL 299053, at *5 (Pa. Ct. Comm. Pl. Jan. 27, 2006). Here, the conversion, self-dealing and fraud claims arise out of and derive specifically from the Gamelan Capital LPA and, the resolution of those claims is dependent upon the interpretation and construction of the Gamelan Capital LPA. Moreover, on their face, Counts II

and III are largely duplicative of the breach of contract claim.  *Compare* Second Amended Compl. ¶¶ 31-32 and 34-37 *with* ¶¶ 24-25.  Because Plaintiffs are precluded from recovering in breach of contract and in tort for the same performance or non-performance under the contract, the tort claims in Counts II and III must be dismissed.

### 1. The Conversion Claim Derives Specifically From Construction Of The Very Same Agreements At Issue In The Breach Of Contract Claim.

Plaintiffs allege conversion based upon (1) the alleged transfer of Plaintiffs' investments from Genesis Capital to Gamelan Capital on or around October 1, 1999 (even though they executed subscription agreements and backdated them to make the transfer effective as of that date)[11] and (2) their alleged demand for the return of the funds on February 26, 2001 and May 25, 2001 and the BHA Plaintiffs "refus[al] to return [their] investment to them."  *See* Second Amended Compl. ¶¶ 26-32.

Plaintiffs' "conversion" claim does nothing more than recast their breach of contract claim.  Indeed, Plaintiffs' alleged conversion claim is totally dependent on interpretation of the Gamelan Capital LPA and the Plaintiffs' agreement to subscribe to Gamelan Capital.  *See Etoll*, 811 A.2d at 14 ("a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts") (internal quotations and citations omitted); *People Mortgage Co., Inc. v. Fed. Nat'l Mortgage Ass'n,* 856 F. Supp. 910, 929-30 (E.D. Pa. 1994) (claim alleging conversion of service fees governed by agreement dismissed as any rights to the income "would properly be protected by a contract action seeking enforcement of the . . . [a]greement or damages for its breach").  For

---

[11] Given these admitted facts, Plaintiffs' conversion claim also fails for the reason of ratification, which although this Court was unable at the motion to dismiss stage to decide the issue of ratification as a matter of law, this Court found that "it appears that it will be difficult for Plaintiffs to prevail on this issue."  Opinion dated July 26, 2006, at 33.

example, the Gamelan Capital LPA specifically governs the conditions and procedures for adding partners to the partnership. *See, e.g.,* Hauptman Aff. Exh. A at 22, § 5.1. Moreover, the Gamelan Capital LPA specifically governs "Withdrawal of Interests of Partners," setting forth the procedures and restrictions on withdrawals of investments. *See* Hauptman Aff. Exh. A at 25, § 5.5; *see also Pittsburgh Constr. Co. v. Griffith,* 834 A.2d at 584 (dismissing conversion claim where duty to pay plaintiffs was governed by the contract).

Moreover, a plain reading of the Second Amended Complaint demonstrates on its face that Plaintiffs' alleged conversion claim is simply a restatement of its breach of contract claim. *Compare* Compl. ¶¶ 31-32 (basing Plaintiffs' conversion claim upon the failure to return Plaintiffs' investments to them on February 26, 2001 and May 25, 2001) *with* Compl. ¶ 25 (alleging breach of contract based upon the BHA Defendants' "refus[al] to remit the plaintiffs investment to them as the result of plaintiffs' demands dated February 26, 2001 and May 25, 2001 *which refusal constituted a breach of the contractual agreement* entered into between these defendants and plaintiffs.") (emphasis added). And, the alleged damages in this action are the *very same* damages that Plaintiffs seek in their breach of contract claim: return of their investment. *See* Second Amended Complaint, Request for Relief in Counts I and II; *see also Neyer, Tiseo & Hindo, Ltd. v. Russell,* Civ. A. No. 92-2983, 1993 WL 53579 at *3-4 (E.D. Pa. March 2, 1993) (dismissing conversion claim where "pleading revealed merely a damage claim for breach of contract"); *see also Montgomery v. Fed. Ins. Co.,* 836 F. Supp. 292, 301-02 (E.D. Pa. 1978) (dismissing conversion claim because of, *inter alia,* the "firmly accepted . . . doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract"). Accordingly, Plaintiffs' conversion claim must be dismissed.

### 2. The Fraud And Self-Dealing Simply Restate The Same Claims Alleged In The Breach Of Contract Claim.

Plaintiffs allege fraud and self-dealing (Count III) based upon the BHA Defendants' alleged improper reporting and valuation of assets and assessment of management fees and excessive travel and entertainment expenses. *See* Second Amended Compl. ¶¶ 35-36. These allegations are the *exact same* allegations that form part of Plaintiffs' breach of contract claim against the BHA Defendants as set forth in paragraphs 22 to 25 of the Second Amended Complaint. *See* Second Amended Compl. ¶ 24 (specifically referring to the BHA Defendants' alleged "fraudulent activity, self-dealing and mismanagement" which includes alleged improper reporting and valuation of assets, charging excessive management fees, and charging excessive travel expenses). Indeed, Plaintiffs specifically cross-reference these allegations of breach of contract in their fraud and self-dealing claim. *See* Compl. ¶ 34 (Count III alleging fraud and self-dealing deliberately points to the breach of contract claim with its statement "See Paragraph 24.") Where claims "essentially duplicate [the] breach of contract claims and the success of [the] claims is wholly dependent on the terms of a contract," the fraud claims are barred by the gist of the action doctrine. *Hart v. Arnold*, 884 A.2d 316 (Pa. Super. Ct. 2005). Accordingly, because the fraud and self-dealing claims arise out of the parties' contractual relationship and the duties and obligations set forth therein, they should be dismissed. *See Hillier,* 2006 WL 299053, at *5 (holding that fraudulent and negligent misrepresentation claims were barred by the "gist of the action" doctrine as all of the claims arose in the course of the parties' contractual relationship and stemmed from duties imposed by the contract itself); *Werner Kammann Machinenfabrik, GmbH v. Max Levy Autograph, Inc.*, No. Civ-A 01-1083, 2002 WL 126634, at *6 (E.D. Pa. Jan. 31, 2002) (dismissing fraud claims under gist of action doctrine because the duties allegedly breached were "created and grounded in the contract itself"); *Caudill Seed & Warehouse Co. v.*

*Prophet 12, Inc.*, 123 F.Supp.2d 826, 834 (E.D. Pa. 2000) (claim that buyer made fraudulent misrepresentations was dismissed under gist of action doctrine because the contract was "**at the heart**" of the fraud claim).

## IV.    THE FRAUD CLAIM IN COUNT III FAILS TO MEET THE PARTICULARITY REQUIREMENTS OF RULE 9(B).[12]

Count III alleges common law fraud against the BHA Defendants.  In order to state a claim for common law fraud under Pennsylvania and Delaware law, Plaintiffs must allege the following:  (1) defendant made a misstatement or omission of material fact (2) with knowledge or belief that the statement was false or with reckless indifference to the truth (3) with an intent to induce the plaintiff to act or refrain from acting (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his injury.  *See Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)*; Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).  In addition to Plaintiffs being required to allege all of these elements, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).  The purpose of Rule 9(b) is to provide defendants with notice of the "precise conduct" with which they are charged and to "prevent false or unsubstantiated charges." *Id.*  In the Third Circuit, a plaintiff's averments must "provide precision and substance to a claim of fraud" and "adequately notify defendants of the misconduct alleged." *Bhatla v. Resort Dev. Corp.*, 720 F. Supp. 501, 508 (W.D. Pa. 1989).  Plaintiffs' Second Amended Complaint utterly fails to comply with these pleading requirements, and thus their fraud claim must be dismissed.

---

[12] Federal Rule of Civil Procedure 9(b) requires fraud to be plead with particularity, as do the Pennsylvania and Delaware counterparts.  *See* Fed. R. Civ. P. 9(b); Pa. R. Civ. P. 1019(b); De. Sup. Ct. Civ. R. 9(b); De. Ct. Ch. R. 9(b).

"[P]laintiffs, through their pleadings, must inject precision and some measure of substantiation into their allegations of fraud. By way of example, allegations of who, what, when, where and how: the first paragraph of any newspaper story, would satisfy the particularity requirement of Rule 9(b)." *In re Advanta Corp.*, No. 97-CV-4343, 1998 WL 387595, at *3 (E.D. Pa. July 9, 1998), *aff'd*, 180 F. 3d 525 (3d Cir. 1999) (*citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)); *see also Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. Ct. 1983) ("The 'circumstances' which must be stated with particularity under Rule 9(b) refer to 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (internal citations omitted).

Unable to provide any details whatsoever as to how this alleged fraud was perpetrated, Plaintiffs merely make generic allegations that the BHA Defendants "engaged in a pattern of fraud and self-dealing for their own benefit and for the benefit of entities in which they had a substantial interest." Plaintiffs basically provide no other allegations regarding the fraud other than to allege generally that the "false and artificial inflation of Gamelan and Genesis assets allowed these defendants to charge hugely inflated management fees" and that "defendants concealed their conduct by providing the plaintiffs with false and misleading information and/or by refusing to provide them with truthful information." *See* Second Amended Compl. ¶¶ 34-35, 37. The Second Amended Complaint never alleges 1) what were the specific acts of alleged fraud; 2) which assets (other than USA Global Link, Inc.) were artificially inflated; 3) how and to what extent the assets or partnership funds were artificially or falsely inflated; 4) what "course of conduct" the BHA Defendants engaged in to allegedly falsely inflate the value of the funds; 5) how the alleged misrepresentations were made; 6) what were the contents of the alleged

misrepresentations and/or what were the alleged omissions; 7) when the misrepresentations or other allegedly fraudulent activity occurred; 8) how Plaintiffs relied upon the misrepresentations; 9) that the BHA Defendants knew the statements were false or were reckless as to their falsity; 10) which fees or expenses were excessive and how those fees or expenses were excessive; 11) when these alleged excessive fees and expenses were charged to the partnership; 12) how any loss was attributable to any fraudulent conduct; or 13) how the alleged misstatements and/or omissions caused the damages alleged, *i.e.*, damage to the partnership assets due to excessive fees and expenses and failure to satisfy Plaintiffs' withdrawal request). *See Lynch v. Janson*, No. 90-5063, 1990 WL 188926, at * 5 (E.D. Pa. Nov. 28, 1990) (dismissing for failure to plead fraud with particularity where plaintiffs failed to plead the time and place of the alleged misrepresentations); *Sprout v. Ellenburg Capital Corp.*, No. Civ. A. 95C-05-025, 1997 WL 716901, at * 8 (Del. Super. Aug. 26, 1997) (dismissing for failure to plead fraud with particularity where plaintiffs failed to provide the dates of the alleged misrepresentations, the contents of the alleged misrepresentations, and the identity of the person making the alleged misrepresentations); *Continental Ill. Nat'l Bank & Trust Co. v. Hunt Int'l Res. Corp.*, Civ. Action Nos. 7888, 7844, 1987 WL 55826, at * 6 (Del Ch. Feb. 27, 1987) (dismissing for failing to plead fraud with particularity where complaint failed to allege how plaintiffs relied upon the misstatement and/or omissions and how the alleged fraud proximately caused the alleged damages); *Nutt*, 466 A.2d at 23 (dismissing fraud claim that failed to state, *inter alia*, when the alleged fraud occurred, when the harm was discovered, or what damages resulted from the fraud).

Indeed, Plaintiffs' pleadings are so inadequate that the BHA Defendants are left completely in the dark as to what the alleged fraud was and, thus, cannot possibly assert defenses

in response.  For example, because there is no information given as to when the alleged fraud occurred, the BHA Defendants cannot even begin to determine if the alleged fraud might be beyond that statute of limitations.  *See Creamer v. Monumental Properties, Inc.*, 314 A.2d 333, 342 (Pa. Commw. Ct. 1973), *aff'd in part, rev'd in part on other grounds by* 329 A.2d 812 (Pa. 1974) (complaint makes it "impossible . . . to answer" as it fails to set forth who did what or which documents contained misrepresentations); *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992) (an allegation of fraud must "explain the nature of the claim to the opposing party so as to permit the preparation of a defense"); *Nutt*, 466 A.2d at 23 (holding that "it is essential that the precise theory of fraud with supporting specifics appear in the complaint").

In the absence of any allegations that specify the particular wrongful conduct or the scienter necessary for alleging a fraud claim, the BHA Defendants can only speculate as to the wrongful acts of which they are accused.  Accordingly, the dual purposes of Rule 9(b) – giving defendants fair notice of claims and preventing false and unsubstantiated claims – are completely undercut by Plaintiffs' Second Amended Complaint.  Thus, Count III must be dismissed for failure to comply with the requirements of Rule 9(b).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Second Amended Complaint be dismissed against Defendants B. Hauptman & Associates, LLC and Bruce A. Hauptman.

Respectfully submitted,

Robert H. Pees
Lynda R. Stadler
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000

Robert M. Barnes
MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
Pittsburgh, Pennsylvania 15219-6401
(412) 338-5200

*Attorneys for Defendants*
*B. Hauptman & Associates, LLC and*
*Bruce A. Hauptman*

Dated:  November 22, 2006