IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

——————————————————————X
                              :

WILLIAM H. STEINBRINK, M.D. and     :
PATRICIA M. STEINBRINK, his wife,    :
                              :

       and                   :       CASE NO. CA 01-382 ERIE
                              :

BAYSIDE OBSTETRICS            :
GYNECOLOGY INFERTILITY, INC.    :
401 (k) PROFIT SHARING PLAN,       :
                              :
               Plaintiffs,   :
                              :
                              :

          v.                 :
                              :

ROTHSTEIN KASS & COMPANY,       :
P.C., B. HAUPTMAN & ASSOCIATES, LLC; :
BRUCE A. HAUPTMAN,          :
                              :
              Defendants.  :
                              :
——————————————————————X

## MEMORANDUM OF LAW IN SUPPORT OF ROTHSTEIN KASS & COMPANY'S MOTIONS TO DISMISS

        This memorandum of law is respectfully submitted on behalf of defendant,

Rothstein, Kass & Company, P.C. ("RKC") in support of its motion pursuant to Rules

12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Second Amended

Complaint herein, on the grounds that each claim for relief alleged therein against RKC

fails to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This action, which was commenced on November 30, 2001, is brought by plaintiffs, William H. Steinbrink ("William"), Patricia M. Steinbrink ("Patricia") and the Bayside Obstetrics Gynecology Infertility, Inc. 401(k) Profit Sharing Plan ("Bayside") (collectively the "Plaintiffs") against RKC, B. Hauptman & Associates, LLC ("BHA") and Bruce A. Hauptman ("Hauptman").  On July 26, 2006 this Court dismissed Plaintiffs' claims asserted against RKC under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") on the grounds that they were time barred and in any event, failed to state a claim upon which relief could be granted.[1]  Although the Court granted Plaintiffs leave to amend, it noted that Plaintiffs (i) "will be hard pressed to... establish the necessary scienter against RKC in their fraudulent claims" and (ii) had "an inability to plead that Plaintiffs were induced to invest in Gamelan based on the 1998 audit report..." because that claim "contradicts Plaintiffs clearly stated allegations that they invested in Gamelan based on Mr. Hauptman's agreement to modify the withdrawal provision."

Plaintiffs, nevertheless, served an amended complaint on October 1, 2006 and a second amended complaint on October 16, 2006.  Plaintiffs abandoned all of their federal claims in the Second Amended Complaint ("Complaint").  The Complaint now asserts four common law claims for relief against RKC for: (i) negligence, (ii) negligent

---

[1]  Prior to this Court's ruling on RKC's motion to dismiss, Plaintiffs withdrew their claims against RKC which alleged violations of the Commodity Exchange Act of 1974.  The Court also dismissed all claims against Stuart Bender, an RKC partner, because no allegations of wrongdoing were made against him in the Complaint.  The Second Amended Complaint does not name Bender as a party defendant.

misrepresentation, (iii) intentional misrepresentation, and (iv) breach of contract.  All of these claims for relief continue to be based upon the same common core of facts that were alleged in the now dismissed original complaint.

In this regard, Plaintiffs claim to have invested in Genesis Capital Fund, LP ("Genesis"), an investment partnership managed by Hauptman through BHA, in the early 1990's.  (Compl. ¶9, 10).  In the latter part of 1999, Plaintiffs wanted to withdraw from Genesis because of its lack of performance (Compl. ¶11), but Hauptman convinced Plaintiffs, instead, to transfer their funds to Gamelan Capital Fund ("Gamelan"), another investment partnership managed by Hauptman.  In order to induce Plaintiffs to transfer their funds to Gamelan, Hauptman agreed to permit Plaintiffs to withdraw their funds from Gamelan on a quarterly basis with a 30 day written notice.  (Compl. ¶31).  Hauptman also allegedly provided Plaintiffs with Gamelan's 1998 annual report, audited by RKC. (Compl. ¶31).

Plaintiffs attempted to withdraw $5,000,000 from Gamelan in February 2000 (Compl. ¶39).  When Hauptman refused to honor this request, Plaintiffs, by letter dated May 25, 2001, attempted to withdraw $7,000,000 (Compl. ¶39-40).  However, "Gamelan never paid plaintiffs anything in response to this request," but instead Plaintiffs' funds "were converted to the use of the defendants BHA and Hauptman" (Compl. ¶ 32, 40).

After unsuccessfully attempting to withdraw their funds from Gamelan, Plaintiffs now assert that "BHA and Hauptman did not operate [Gamelan], in the best interests of the plaintiffs."  Rather, Hauptman and BHA engaged in "fraudulent activity,

self-dealing, and mismanagement" (Compl. ¶24). These activities included, inter alia, the "false and artificial inflation of Gamelan and Genesis assets", which permitted BHA and Hauptman to charge Gamelan "hugely inflated management fees", as well as Hauptman "unilaterally" charging Gamelan "excessive travel and entertainment expense." (Comp. ¶35).

However, none of the details of this alleged "self-dealing, fraud and mismanagement" are alleged.[2]  Plaintiffs do not identify any travel or entertainment "expenses" alleged to be "excessive" or how and in what manner the expenses were, in fact, excessive.  Nor do Plaintiffs provide the detail of the "course of conduct" by which it is claimed that BHA and Hauptman inflated the value of the funds. (Compl. ¶24d).

RKC has been named a defendant in this action solely because it audited certain financial statements of Genesis and Gamelan.  It is thus alleged that beginning in 1994, RKC "was retained by the general partners" of Genesis and Gamelan to perform year-end audits of Gamelan's and Genesis' financial statements (Compl. ¶40).  Plaintiffs claim that they relied on these financial statements "in making their investment decisions relative to investing in the funds and relative to the continuation and addition to those investments" (Compl ¶44).  However, Plaintiffs have not identified one specific financial statement that they allegedly relied on or one specific investment decision that they

---

[2]    Although it is claimed that Gamelan's payment of travel expenses of $258,308 in 2000 and $102,703 for the six months ended June 20, 2001 were "excessive" and "not justified", Plaintiffs do not explain how and in what manner these expenses were "excessive" or why they were "not justified".  Similarly, although Plaintiffs claim that the valuation of investments resulted in the overpayment of management fees and special allocations to BHA, and the overpayment of withdrawal of capital by BHA, Plaintiffs do not reveal when these payments were made or the amount of any alleged overpayment. (Compl. ¶45(b)(4)(5) and (b), 45(c) (4)(5) and (8)).

allegedly made in reliance on any financial statement audited by RKC. Certainly, Plaintiffs cannot claim that they relied on any financial statement audited by RKC in transferring their funds from Genesis to Gamelan because, as this Court previously held, that decision was based on "Mr. Hauptman's agreement to modify the withdrawal provisions."

Nevertheless, it is alleged that "RKC acted in a negligent and careless manner preparing the audit and financial statements of Genesis and Gamelan". (Compl. ¶45) Although Plaintiffs allege that RKC was negligent in "[f]ailing to perform its audits in compliance with generally accepted accounting standards" (Compl. ¶45(a)), not one specific "accounting standard" is identified which RKC allegedly violated in any specific audit performed by RKC; nor is it explained how or in what manner how RKC's failure to comply with "accounting standards" resulted in any specific inaccuracy in any of Genesis's or Gamelan's financial statements.

Moreover, Plaintiffs do not identify any specific errors in any financial statements audited by RKC or quantify the amount of any inaccuracies. Although Plaintiffs claim that there were "material misstatements" in Genesis' 1996 and 1997 financial statements and Gamelan's 1999 and 2000 financial statements that were "associated with valuations of illiquid investments" (Compl. ¶45(b)(1), 45(c)(1)) the amount of the "material misstatements" are not quantified, none of the "illiquid investments" are identified and it is not alleged how or in what manner the valuation of these investments resulted in "material misstatements" in Genesis' or Gamelan's financial statements.

As demonstrated below, such conclusory allegations are insufficient to permit the claims against RKC to go forward. These claims must be dismissed for the following reasons: (i) Plaintiffs cannot show any relationship or duty, contractual or otherwise, to support their claims of professional negligence and negligent misrepresentation; (ii) Plaintiffs' breach of contract allegations amount to nothing more than RKC failed to act with due professional care, which constitute a professional negligence claim rather than a breach of contract claim; and (iii) Plaintiffs' negligent and intentional misrepresentation claims fail to plead fraud with the requisite specificity demanded by Rule 9(b) of the Federal Rules of Civil Procedure.

### POINT I

### PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM AGAINST RKC

In order adequately to allege a claim for negligence under Pennsylvania law, a complaint must assert facts to show the defendant's legal duty of care towards plaintiff, a breach of that duty either by act or omission, injury as a result of the breach of duty, and damages. *Martin v. Evans*, 551 Pa. 496, 711 A.2d. 458 (Pa. 1998). In the context of an accountant's alleged negligence, the complaint must allege that the accountant had a duty to the plaintiff to exercise the ordinary skill and competence of members of their profession, that the accountant failed adequately to discharge that duty, and that such failure resulted in the plaintiffs' injury and damages such that liability attaches. *Robert Wooler Co. v. Fidelity Bank,* 330 Pa. Super. 523, 479 ¶2d 1027 (Pa. Super. Ct. 1984). Plaintiffs' cause of action against RKC must fail because RKC owed no duty to Plaintiffs, as matter of

law, and Plaintiffs have, in any event, failed to plead any causal connection between their loss and RKC's alleged negligence.

### 1.    Duty

In the first instance, Plaintiffs may not maintain a negligence claim against RKC because Plaintiffs cannot show any relationship or duty, contractual or otherwise, to support their claim of professional negligence.  According to the Complaint, RKC was retained by Genesis and Gamelan's general partner, not Plaintiffs, and under well settled Pennsylvania legal authority, an accounting firm cannot be liable for its negligence to anyone other than its own client.  Indeed, the allegations of the Complaint establish that RKC had no accountant-client relationship, contractual or otherwise, with Plaintiffs.

Pennsylvania's strict privity requirement was first enunciated in *Landell v. Lybrand,* 264 Pa. 406, 107 A. 783 (1919), in which the plaintiff claimed that he had been induced to purchase stock in a company and that he relied upon reports that had been prepared for the company by the defendant-accountants.  In rejecting this claim, the Pennsylvania Supreme Court stated (264 Pa. at 408):

> There was no contractual relationship between the plaintiff and defendants, and, if there is any liability from them to him, it must arise out of some breach of duty, for there is no averment that they made the report with the intent to deceive him.  The averment in the statement of claim is that the defendants were careless and negligent in making their report; but the plaintiff was a stranger to them and to it, and, as no duty rested upon them to him, they cannot be guilty of any negligence of which he can complain.

Following the holding in *Landell*, federal courts in Pennsylvania have consistently determined that Pennsylvania law does not permit a professional negligence

- 7 -

claim against accountants in the absence of privity.  In *PNC Bank, Kentucky, Inc., v. Housing Mortgage Corp.,* 899 F. Supp. 1399, 1408 (W.D. Pa. 1994), this Court expressly held that "it is still the law in Pennsylvania that an action for professional negligence may not be maintained absent privity of contract between the parties".  See also, *In re Phar-Mor, Inc. Sec. Litig.,* 892 F. Supp. 676, 694 (W.D. Pa. 1995) ( noting that a professional negligence claim may not be maintained against an accountant in the absence of privity); *Pell v. Weinstein,* 759 F. Supp. 1107, 1120 (M.D. Pa. 1991), aff'd mem., 961 F.2d 1568 (3d Cir. 1992): ("In Pennsylvania, an action for professional negligence cannot be maintained unless there is privity of contract between the parties...")

Pursuant to these authorities, Plaintiffs' cause of action for professional negligence against RKC cannot be sustained.  Nowhere do Plaintiffs allege that they actually engaged (i.e., contracted with) RKC to perform any auditing services on their behalf or on behalf of Genesis or Gamelan.  Instead, Plaintiffs admit that RKC "was retained by the general partner" of Genesis and Gamelan.  Evidently aware of the limits on claims for professional negligence, Plaintiffs attempt to circumvent Pennsylvania's strict privity requirement by alleging that RKC was retained by the general partner "on behalf of the limited partners of Genesis and Gamelan" (Compl. ¶40) and that the "annual audit and financial statements were directed to the funds partners." (Compl. ¶43)

These allegations, however, fail to provide a legal basis for any claim against RKC since the Plaintiffs, at best, allege that they were intended beneficiaries of the audit performed by RKC on behalf of Genesis and Gamelan.  This is an insufficient relationship

on which to mount a claim of professional negligence because even intended beneficiaries of an audit report may not recover from the auditor on a negligence theory.

Allegations analogous to the ones here made by Plaintiffs have been uniformly rejected. In *PNC Bank, Kentucky, Inc. v. Housing Mortgage Corp., supra,* this Court dismissed the professional negligence claim against the defendant accounting firm for lack of privity even though the plaintiffs claimed that "they were the intended recipients of the benefit of the audit reports" (899 F. Supp. at 1408). Similarly, in *Wilder v. Williams,* 1989 U.S. Dist. LEXIS 7080 (W.D. Pa. February 7, 1989) the plaintiffs claimed to be "third-party beneficiaries of [the client's] professional relationship with the defendants and they should be permitted to sue for malpractice." The court, nevertheless, dismissed the complaint "for lack of privity." See also, *Pell v. Weinstein,* 759 F. Supp. 1107, 1119 (M.D. Pa. 1991) (rejected negligence claims based on theory that plaintiffs were "contemplated and foreseeable users" of financial statements audited by the defendant accounting firm).

### 2.    Causation

As noted above, in addition to alleging a duty to Plaintiffs, a professional negligence claim requires a causal connection between the alleged wrong and the alleged damage. *Robert Wooler Co. v. Fidelity Bank, supra.* The Complaint, however, does not allege any causal nexus between any act or omission by RKC and Plaintiffs' complained of damage. Plaintiffs merely allege in a conclusory manner that they have "sustained substantial financial injury." (Compl. ¶47). This is simply insufficient, as a matter of law, to establish loss causation.

Clearly, as this Court observed in dismissing plaintiffs' original complaint, Plaintiffs cannot, based on their own allegations, establish that RKC's alleged wrongdoing caused them any damage because they admittedly incurred losses when Hauptman on behalf of Gamelan refused to honor Plaintiffs' request to withdraw their funds from Gamelan, and <u>not</u> as a result of any act or omission of RKC (Compl. ¶20-21).

## POINT II

### PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED

The lack of privity with RKC also bars Plaintiffs' negligent misrepresentation claim against RKC. It is established that "[a]ny negligence claim, including one for negligent misrepresentation, 'is premised on the existence of a duty owed by one party to another'". *Philadelphia Gear Corp. v. Swath International,* 2002 U.S. Dist. LEXIS 11412 (E.D. Pa. January 29, 2002). See also, *Gibbs v. Ernst, supra* (647 A. 2d at 890) (negligent misrepresentation claim "is premised on the existence of a duty owed by one party to another"). Thus, if the plaintiff "does not allege a duty owed to it by [the defendant], a negligent misrepresentation claim must fail." *Philadelphia Gear Corp., v. Swath International, Inc., supra.*[3]

Plaintiffs' negligent misrepresentation claim against RKC must be dismissed because, as demonstrated above, RKC owed no duty to Plaintiffs as a result of Pennsylvania's strict privity rule. Here as, in *PNC Bank, Kentucky, Inc. v. Housing Mortgage*

---

[3] The elements of a claim for negligent misrepresentation under Pennsylvania law are: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresentor ought to have known its falsity; (3) with an intent to induce another to act on it and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 561 (Pa. 1999).

*Corp.* 899 F. Supp. 1399, 1407 (W.D. Pa. 1994), Plaintiffs' claim "although couched in terms of negligent misrepresentation, clearly involves the alleged breach by [RKC] of its obligations to perform audits of [Midas] financial statements according to Generally Accepted Auditing Standards. This is the very heart of a professional negligence claim."

Indeed, Plaintiffs' negligent misrepresentation claim, like their negligence claim is based on the allegation that "RKC's failure to cause Genesis and Gamelan to disclose the irregularities, self-dealing, fraud and mismanagement in the operation of Genesis and Gamelan *deviated from professional standards of care...*" (Compl. ¶52). (Emphasis added). Under these circumstances, "the mere pleading of negligent misrepresentation" is insufficient because "Pennsylvania's strict adherence to the privity rule would result in a ruling that negligent misrepresentation may not be used to plead professional negligence claims by persons not in privity with the professional defendants." *Id.* at 1408. See also, *First Options of Chicago, Inc. v. Wallerstein*, 1994 U.S. Dist. LEXIS 7132 (E.D. Pa. May 24, 1994).

## POINT III

### PLAINTIFFS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED

In like measure, Plaintiffs' purported breach of contract claim against RKC must be dismissed because no express contract between any of the plaintiffs and RKC is alleged. In any event, the only "breach" alleged is the failure to "to comply with professional and generally accepted accounting principles in preparing the audits and financial statements." (Compl. ¶65). This type of allegation fails to state a claim for breach

- 11 -

of contract against RKC because, as a matter of law, these assertions constitute a claim for professional negligence and do not constitute a claim for breach of contract.

Failure to perform a service with the requisite level of professional skill "typically constitutes a claim of negligence, not breach of contract." *The Official Committee of Unsecured Creditors of Correl Steel v. Fishbein and Company P.C.,* 1992 U.S. Dist. Lexis 11618, at *17 (E.D. Pa. 1992); *Hoyer v. Frazee*, 323 Pa. Super. 421, 425, 470 A.2d 990, 992-93 (1984). As, the *Fishbein* court explained: "an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for breach of a duty imposed  by law, which arises from an obligation created by a relation, ordinarily unconnected with a contract, but may arise independently of any contract or by virtue of contract relations." *Fishbein,* 1992 U.S. Dist. Lexis 11618 at *18. (citation omitted)

The *Fishbein* court dismissed the breach of contract claim against the defendant accountants because the contract was not the source of the accountant's duty to act with professional care, but to the contrary, the duty to act with professional care arose from a duty imposed by law. *Id.*  Similarly,  the Court held in *Red Rose Motors, Inc., v. Bayer & Ritter*, 2004 Pa. Dist. & Cnty. Dec. LEXIS 255 (Common Pleas Ct. February 23, 2004):

> "The plaintiffs' complaint contains only two substantive paragraphs pertaining to the alleged breach of contract, and both are couched in the clear verbiage of a negligence claim. Paragraph 40 asserts that Boyer & Ritter "breached its engagement contract with Red Rose which required B&R to use reasonable care and skill to conduct the review of Red Rose's accountants and to inform Red Rose" about its financial condition. The plaintiffs do not plead that a specific provision of the contract has been breached.  Their contention that Boyer & Ritter did not use reasonable care and skill constitutes a

breach of a general duty to act with due care, which is imposed by law. Ultimately, their assertion constitutes a claim for professional negligence and does not constitute a claim for breach of contract."

As in the cases cited above, RKC's alleged failure to perform its audits in accordance with the requisite professional standard of care gives rise to a claim for negligence, not breach of contract. See also, *Robert Wooler Co. v. Fidelity Bank*, 330 Pa. Super. 523, 479 A.2d 1027.[4]

## POINT IV

### PLAINTIFFS' INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS FAIL TO COMPLY WITH RULE 9(b) FED. R. CIV. P.

To state a cause of action for fraud or fraudulent misrepresentation under Pennsylvania law, the plaintiff must plead (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result of the misrepresentation.[5]  *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir. 1991); *Mann v. J.E. Baker Co.*, 733 F. Supp. 885, 889 (M.D. Pa. 1990); *Sevin v. Kelshaw*, 417 Pa. Super. 1, 611 A.2d 1232, 1236 (1992); *Bash v. Bell Telephone Co.*, 411 Pa. Super. 347, 601 A. 2d 825, 831 (1992).

---

[4]   In order to state a claim for breach of contract, a plaintiff must plead and prove the breach of a specific provision of the contract, rather than a general duty to act with due care. *Hoyer v. Frazee*, 323 Pa. upper. 421, 425-26, 470 A.2d 990, 992-93 (1984).

[5]   As noted above, a negligent misrepresentation claim requires the same elements, except that unlike an international misrepresentation claim, negligent misrepresentation does not require a specific intent to defraud. *Bortz v. Noon, supra.*

Under *Fed. R. Civ. P. 9(b)*, each of these elements of fraud must be pled "with particularity."[6] Simply stated, Rule 9(b) "requires plaintiffs to plead the 'who, what, when, where and how: the first paragraph of any newspaper story." *In re Advanta Corp. Sec. Litig.*, 180 F. 3d 525, 534 (3d Cir. 1999).[7] These pleading requirements, as mandated by Rule 9(b), apply to claims for negligent misrepresentation, as well as intentional misrepresentation. *In re: Student Finance Corp.*, 2004 U.S. Dist. LEXIS 4952 (D. Del. March 23, 2004); *Dealers Supply Co., Inc. v. Chief Industries, Inc.*, 348 F. Supp. 579 (M.D.N.C. 2004).

As demonstrated below, plaintiffs' intentional misrepresentation and/or negligent misrepresentation claims must be dismissed because the Complaint is so devoid of <u>factual</u> allegations establishing necessary elements of a negligent and/or intentional misrepresentation claim against RKC that it fails to meet even the minimal pleading requirements of Rule 9(b).

## A.     Misrepresentation

The Complaint fails, in the first instance, to satisfy the minimal pleading requirements of Rule 9(b) because it fails to state the "circumstances constituting fraud...with particularity" in that the allegations of the Complaint fail to detail the who,

---

[6]  Rule 9(b) states:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be state with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  It has been held that the purpose of Rule 9(b) is to place the defendant on notice of the precise misconduct with which it is charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  *United States by Department of Housing and Urban Development Ex. Rel. Givler v. Smith,*775 F. Supp. 172, 181 (E.D. Pa. 1991).

[7]  The Court of Appeals for the Third Circuit has held that "Rule 9(b) requires a plaintiff to plead (1) a specific representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir.), cert. denied, 506 U.S. 934, 113 S. Ct., 365, 121 L. Ed. 2d 278 (1992).

what, where, why and how of any fraud or misrepresentation.  Although, as alleged in the Complaint, this fraud includes the "[d]issemination of false and misleading financial statements" (Compl. ¶24 (a)), the Complaint does not identify the specific financial statements claimed to be "false and misleading" or how and in what manner any specific financial statement was, in fact, "false" or "misleading".  No specific misstatement in any financial statement is identified or quantified.

Similarly, although Plaintiffs' have charged RKC with having failed "to disclose the irregularities, self-dealing, fraud and mismanagement of Genesis and Gamelan." (Compl. ¶56)  (the "Fraud"), none of the details of the "fraud", "self-dealing" or "irregularities" are alleged.  For example, Plaintiffs' claim that BHA and Hauptman charged "excessive" management fees and travel and entertainment expenses (Compl. ¶ 24 (b) and (c)), but Plaintiffs do not identify any such "fees" or "expenses" or explain by how much, why or how and in what manner such fees and expenses were "excessive".  In like measure, although the Complaint alleges that BHA and Hauptman engaged in "a course of conduct designed to falsely inflate the paper value of funds" (Compl. ¶24 (d)), none of the details of the alleged "course of conduct" are provided.  It is not alleged when, by whom, by how much or how in what manner the value of the funds was inflated.

In analogous circumstances, this Court, in *Fox v. Equimark Corp.,* 728 F. Supp. 295, 298 (W.D. Pa. 1991), held like-type allegations to be deficient because "plaintiffs had failed to provide a single concrete example."  Similarly, in *Pell v. Weinstein,* 759 F. Supp. 1102, 1118 (M.D. Pa. 1991) the Court dismissed the complaint because "the plaintiffs do not

even attempt to identify the errors in the financial statements or the amount of any inaccuracies, nor do they identify any specific accounting principal or auditing standard which was violated."

### B.    Intent

In order to state a claim for intentional misrepresentation, Plaintiffs must set forth factual allegations establishing that a representation "made falsely, with knowledge of its falsity or recklessness as to whether it is true or false." *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (Sup. Ct. Pa. 1994). Although these allegations must be made with the particularity mandated by Rule 9(b), Plaintiffs merely allege that "RKC acted intentionally, with gross negligence, with recklessness, or with a conscious ignorance in failing to cause Genesis and Gamelan to disclose the irregularities, self-dealing, fraud and mismanagement of Genesis and Gamelan..." (Compl. ¶56). These types of conclusory allegations are, however, insufficient to establish the "intent" element of an intentional misrepresentation claim against an auditor or accountant.

Instead, Plaintiffs must plead facts to establish that the auditor "knew or should have known that [the financial statements] were derived in a manner inconsistent with reasonable accounting practices." *Id.* To this end, Plaintiffs must plead specific suspicious facts that were in the possession of the auditor <u>at the time of the audit</u> that were either deliberately or recklessly ignored. See, *In re SCB Computer Technology Inc. Sec. Litig.*,

- 16 -

149 F.Supp. 2d 334, at 356 (W.D. Tenn. 2001) (Plaintiffs must "identify specific, highly suspicious facts and circumstances of which the auditor was aware at the time of the audit and ...deliberately or recklessly ignored"); *In re Smartalk Teleservices Sec. Litig.* 124 F. Supp. 505, 514 (S.D. Ohio 2000) (In order to satisfy their burden under Rule 9(b), plaintiffs must, at least, "identify highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored, either deliberately or recklessly..."); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 2002 U.S. App. LEXIS 470 *113 (3d Cir. January 11, 2002) ("mere second-guessing of calculations will not suffice; appellants must show the [the auditor's] judgment - at the moment exercised - was sufficiently egregious...").

Here, Plaintiffs do not set forth any "highly suspicious facts and circumstance" or other facts actually known to RKC at the time of any audit that it intentionally or recklessly disregarded. Plaintiffs have not alleged any specific facts or knowledge possessed by any representative of RKC that did or would have alerted RKC to any "irregularities", "self-dealing" and/or "fraud". Indeed, Plaintiffs do not identify any letter, notes, memos, telephone calls, or conversations that expressly or even impliedly suggest that RKC was on notice of Hauptman's alleged fraud.

As a result, Plaintiffs allegations fail to comply with Rule 9(b) in that the Complaint "discloses none of the circumstances that might separate fraud from the benefit of hindsight." *Fox v. Equimark Corp., supra* 728 F. Supp at 299. This case is not unlike *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983) wherein the

Court found that a fatal "defect" in the complaint was "the complete absence of any disclosure of the manner in which...the defendants knowingly departed from reasonable accounting practices...[w]hat those practices are and how they were they were departed from is nowhere set forth."  Similarly, in *Fox v. Equimark Corp., supra,* this Court held that a complaint was "inadequate under the Christidis standard because it fails to explain the manner in which reserves were  improperly established or falsely  disclosed." 728 F. Supp. at 301. [8]

Plaintiffs cannot avoid dismissal by alleging that RKC failed "to perform its audits in compliance with generally accepted accounting standards" (Compl. ¶45 (a).[9]  It is firmly established, that the "failure to follow GAAP is, by itself, insufficient to state a fraud claim".  *In re Comshare* 183 F.3d 542, 553 (6th Cir. 1999)  See also *Reiger v. Price Waterhouse Coopers LLP* 117 F. Supp. 2d 1003, 1009 (S.D. Cal. 2000) ("Violations of GAAP or GAAS,

---

[8]  An audit does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being;  indeed, even an audit conducted in strict accordance with professional standards countenances some degree of calibration for tolerable error which, on occasion, may result in a failure to detect a material omission or misstatement.  See AICPA General Standard No. 3 (audit requires only due professional care) (cited in *Vladimir v. Deliotte & Touche LLP*, 1997 WL 151330, at *5 (S.D.N.Y. Mar. 31, 1997)). Rather, the "objective of the ordinary examination of financial statements by the independent auditor is the expression of an opinion on the fairness with which they present financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles."  AU §110.01 (quoted in *United States v. Weiner*, 578 F.2d 757, 786 n.27 (9th Cir. 1978)).  In other words, in issuing an opinion, the auditor certifies only that it exercised appropriate, not flawless, levels of professional care and judgment.  See *La Rossa v. Scientific Design Co.,* 402 F.2d 937, 943 (3d Cir. 1968) ("Those who hire (experts) are not justified in expecting infallibility, but can expect only reasonable care and competence.  They purchase service, not insurance.") (citing *Gagne v. Bertran*, 43 Cal. 2d 481, 275 P.2d 15, 20 (Cal. 1954)).

[9]  Generally accepted accounting principles comprise a set of basic postulates and broad accounting principles pertaining to business enterprises.  These principles, approved by the American Institute of Certified Public Accountants ("AICPA"), establish guidelines for measuring, recording and classifying the transactions of a business entity.  See, e.g., *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1222-23 n.17 (S.D.N.Y. 1992).  Generally accepted auditing standards embody the general standards prescribed by the AICPA for the conduct of auditors in the performance of an examination. Id.  However, it has been recognized by the Third Circuit that even an audit in compliance with GAAP and GAAS may still result in a failure to detect material misstatements and omission.  *In re Ikon Office Solutions Inc. Sec. Litig., supra.*

standing alone, do not satisfy the particularity or strong inference requirements of the Reform Act because they provide no specific facts upon which a court can infer the state of mind of the accountant or its client, at any specific point in time"); *In re Software Toolworks, Inc.* 50 F. 3d 615, 627-28 (9th Cir. 1994) ("The mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter"); *In re Smartalk Teleservices Sec. Litig.*, 124 F. Supp. 505, 516 (S.D. Ohio 2000) ("This Court refuses to conclude that allegations of an auditor's failure to discover accounting errors alone is sufficient to create a strong inference of recklessness").

## C.    Causation

The Complaint also fails to adequately allege that Plaintiffs alleged injury was "proximately caused" by any act or omission of RKC.  In order to state a claim for intentional or negligent misrepresentation under Pennsylvania law, Plaintiffs must allege sufficient facts to show that the claimed injury was proximately caused by the alleged wrong. *Gibbs v. Ernst, supra*[10].  Proximate causation requires that there must exist a "direct causal link between the misstatement and the claimant's economic loss".  *Huddleston v. Herman & MacLean*, 640 F. 2d 534, 549 (5th Cir. 1981), *aff'd in part and rev'd in part*, 459 U.S. 375, 103 S. Ct. 683 (1983).  See also, *In re Investors Funding Corp. Securities Lit.*, 523 F. Supp.

---

[10]    The concept of proximate cause under Pennsylvania law is the functional equivalent of "loss causation" as applied in the federal securities law context. *Edward Bartolo Corp. v. Coopers & Lybrand*, 928 F. Supp. 557, 563 (W.D. Pa. 1996) ("loss causation reflects the rule of proximate cause borrowed from the federal securities law context").  In following these authorities, the Third Circuit has "equated loss causation with proximate cause." *EP Medsystems, Inc. v. Ecopath, Inc.* 235 F.3d 865, 883 (3d Cir. 2000).  See also *Semerenko v. Cendant Corp.* 223 F. 3d 165, 184 (3d Cir. 2000) (there must be a "sufficient causal nexus between the loss and the alleged misrepresentation").

- 19 -

533, 539 (S.D.N.Y. 1980) *aff'd sub. nom, Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57(2d Cir. 1985), ("the injury must have been a proximate result of the misleading statements or omissions"). The plaintiff's failure to adequately plead proximate causation will result in the dismissal of the complaint. *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489 (2d Cir. 1992) *EP Medsystems, Inc. V. Echocath, Inc.*, 235 F.3d 865 (3d Cir. 2000).

In the context of this case, Plaintiffs must factually allege that RKC's alleged audit failures "were a substantial factor in bringing about the losses that they suffered." *Edward J. Debartollo Corp. v. Coopers & Lybrand*, 928 F.Supp. 557, 562 (W.D. Pa. 1996). Where, as here, the claimed loss is a decline in the value of an investment, Plaintiffs must allege that the decline in value is attributable to the fraud. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079, 115 S. Ct. 728 (1995). (To plead causation, the plaintiff must allege that the misrepresentations "were the reason the transaction turned out to be a losing one.") *Robbins v. Kroger Properties, Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997), (the plaintiff must allege and prove "a causal connection between the misrepresentation and the investment's subsequent decline in value.")

In the case at bar, proximate causation has not been adequately pled with the particularity required by Rule 9(b) because no facts are alleged which link the alleged negligent or intentional misrepresentations by RKC and any alleged decline in value of Plaintiffs' investment. Instead, Plaintiffs merely claim that "[a]s a direct and proximate result of the conduct or RKC..., the plaintiffs sustained serious and substantial financial injury." (Compl. ¶58).

Conclusory allegations such as these, which do not even set forth the nature, magnitude or how and in what manner "substantial financial injury" was incurred, plainly do not plead how <u>any</u> injury allegedly suffered by Plaintiffs was, in fact, caused by any act or omission of RKC.  In any event, the allegations of the Complaint establish that it was Hauptman's refusal to honor his agreement to permit Plaintiffs to withdraw their funds on a quarterly basis, and <u>not</u> any act or omission of RKC, that caused Plaintiffs their alleged "substantial financial injury".

### D.    Reliance

The Complaint also fails to adequately allege Plaintiffs' reliance on any financial statements audited by RKC.  The clear weight of authority requires that the detrimental reliance element of a fraud claim be pleaded with particularity under *Rule 9(b)*. *Gutman v. Howard Savings Bank,* 748 F. Supp. 254, 257 (D.N.J. 1990);  *Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir. 1987) (stating "reliance must be pleaded with particularity" and dismissing fraud claims for failure to plead reliance with particularity); *Bank of Am. v. Lemgruber,* 2005 U.S. Dist. LEXIS 61, at *77 (S.D.N.Y. Jan. 5, 2005) ("Justifiable reliance must be pleaded with particularity pursuant to *Federal Rule of Civil Procedure 9(b)."); Amzak Corp. v. Reliant Energy Inc.,*  2004 U.S. Dist. LEXIS 16514, at *16-17 (N.D. Ill. Aug. 19, 2004) ("to sufficiently plead reliance, plaintiffs would have to link one or more of the alleged misrepresentations with a specific act of reliance.").

Plaintiffs' conclusory allegation that financial statements audited by RKC "were relied upon by the plaintiffs in making their investment decisions relative to

investing in the funds and relative to the continuation and addition to those investments"
(Compl. ¶44), is woefully inadequate to satisfy Rule 9(b)'s particularity requirement. Here,
as in *Scansource v. Datavision - Prologic, Inc.*, 2005 U.S. Dist. LEXIS 7291 (E.D. Pa. April 26,
2005), "Plaintiff offers no details whatsoever about the contours of this asserted justifiable
reliance and it avers nothing regarding the decision that it made as a result of Defendants'
asserted misrepresentations."

Not only have Plaintiffs failed to offer the "details" of their alleged reliance,
they have also failed to offer any explanation of how they can allege reliance in light of this
Court's admonition that their claims of reliance on financial statements audited by RKC are
flatly contradicted by their claim that they invested in Gamelan based on Hauptman's
representation that Plaintiffs would be permitted to withdraw their Funds on a quarterly
basis.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted that the motion made on
behalf of RKC be, in all respects, granted and that the Complaint and each claim for relief

alleged therein as against RKC be dismissed in its entirety.

Respectfully submitted,

LAW OFFICES OF TIMOTHY D. McNAIR

By:____s/ Timothy D. McNair_____
   Timothy D. McNair, Esquire
   Attorneys for Defendants
   Rothstein, Kass and Company P.C.
   821 State Street
   Erie, Pennsylvania 16501
   (814) 452-0700
   PA ID# 34304

Of counsel:

Joel M. Wolosky, Esq.
Hodgson Russ LLP
230 Park Ave. 17th Floor
New York, NY 10169
(212) 751-4300

- 23 -