IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| WILLIAM H. STEINBRINK, M.D. and PATRICIA M. STEINBRINK, his wife, <br><br> and <br><br> BAYSIDE OBSTETRICS GYNECOLOGY INFERTILITY, INC. 401(k) PROFIT SHARING PLAN, <br><br>       Plaintiffs <br><br>  v. <br><br> ROTHSTEIN, KASS & COMPANY, P.C.; B. HAUPTMAN & ASSOCIATES, LLC; BRUCE A. HAUPTMAN, <br><br>       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CASE NO. CA 01-382 - Erie <br><br> Filed Electronically |

## BRIEF IN OPPOSITION TO ROTHSTEIN, KASS & COMPANY'S MOTIONS TO DISMISS

### INTRODUCTION

The defendant, Rothstein, Kass & Company, (hereinafter "RKC") has filed various motions to dismiss pursuant to Federal Rules of Civil Procedure 12 (b)(6) and (9)(b).  The plaintiffs have elected to substantially simplify this case by withdrawing Count 6 (Intentional Misrepresentation) and Count 7 (Breach of Contract).  The plaintiffs will limit their brief to RKC's motions concerning Counts 4 (Negligence) and Count 5 (Negligent Misrepresentation).

### STATEMENT OF FACTS

The Steinbrinks and Bayside were clients of RKC from 1994 through 2001.  (See Steinbrink Affidavit filed separately)  During this time period, RKC audited Genesis and later

Gamelan and provided certified copies of those audits to the Steinbrinks and Bayside. In addition, RKC prepared Partnership Form 1065 and individual K-1 IRS forms for the Steinbrinks and Bayside as well as provided tax advice in letters and documents sent directly to the Steinbrinks and Bayside. See Steinbrink Affidavit, para. 3. These services were not provided for free. The Steinbrinks and Bayside paid a proportional share of RKC's yearly fees in direct proportion to their percentage of interest in both Genesis and Gamelan. The K-1s were prepared in the name of Dr. and Mrs. Steinbrink as well as Bayside which reflected any income and/or loss and further the accompanying correspondence provided tax advice as to how these items should be treated by their tax preparer in preparing their Form 1040 tax return for each of the years in question. The Steinbrinks and Bayside relied upon the audits, partnership returns, K-1s and financial and tax advice provided by RKC from 1994 through 2001. (See Steinbrink Affidavit)

   At all times, the Steinbrinks and Bayside depended upon RKC to provide complete and accurate information regarding the financial activities of Hauptman in his operation of Genesis and Gamelan. They paid for these services and were entitled to rely upon them.[1] Although Hauptman chose RKC to perform the yearly audits on Genesis and Gamelan from 1994 through 2001, the Steinbrinks and Bayside trusted and relied upon RKC to provide truthful and accurate information regarding Hauptman's activities.

   Because of the errors and omissions in the financial statements prepared by RKC for both Genesis and Gamelan, the Steinbrinks did not know the true financial condition of Genesis and Gamelan and the fraudulent activity engaged in by Hauptman. As a result of these errors and

---

[1]  Conspicuously absent from RKC's motion to dismiss is any reference to the engagement letter entered into between RKC and Hauptman to perform the audit and financial services for Genesis and Gamelan. The plaintiffs assert that the engagement letter would establish the relationship between RKC and the limited partners, in this case Steinbrinks and Bayside. Further, all of the exhibits attached to Dr. Steinbrink's affidavit are consistent with an accountant-client relationship.

omissions, (see Complaint, para. 44-45) the Steinbrinks were unaware when they met with Hauptman in the Fall of 1999 that there were significant irregularities in the operation of Genesis that were not disclosed in the financial documentation that RKC provided to the Steinbrinks. Further, during that meeting, Hauptman presented to Steinbrink's the 1998 audit report of Gamelan prepared by RKC which indicated that there were no financial irregularities or unreasonable valuation of assets. Because of the errors and omissions of RKC in not disclosing the true financial condition of both Genesis and Gamelan, the Steinbrinks were deprived of important information in making their decision whether to roll their funds from Genesis into Gamelan. The errors and omissions of RKC allowed Hauptman to misrepresent the true condition of Genesis and Gamelan at a critical point in time when the Steinbrinks were attempting to decide whether to withdraw from Genesis or follow Hauptman's advice and roll their funds into Gamelan.

      In 2001, the Steinbrinks attempted to withdraw their funds from Gamelan and were finally able, after numerous requests, to obtain documentation from Hauptman's counsel concerning the operation of both Genesis and Gamelan. At that time, they first learned of RKC's significant errors and omissions in the preparation of the yearly audits of Genesis and Gamelan. See Steinbrink Affidavit, para. 5. After receiving this information, the Steinbrinks timely initiated an action against RKC.[2]

---

[2]     The Steinbrinks have not had the benefit of taking any pretrial discovery in this case. Further, the Steinbrinks have concomitantly filed a Motion to Disclose the Engagement Contract between RKC and Genesis and subsequently Gamelan. The failure of RKC to attach as an Exhibit the Engagement Letter is conspicuous by its absence. The engagement letter would define the relationship between Hauptman, Genesis and subsequently, Gamelan and the limited partners of each of these funds and the obligations of RKC in relation to the limited partners. This document is relevant to RKC's claim that there was a lack of privity between RKC and the plaintiffs.

3

**ARGUMENT**

The defendant RKC has filed motions to dismiss pursuant to F.R.C.P. 12(b)(6) and (9)(b). At this stage of the proceedings "All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *PNC v. Housing Mortgage Corporation,* 899 F. Supp. 1399, 1402-3 (W.D. Pa 1994). As this court further stated, the motion cannot be granted "unless the court is satisfied 'that no relief could be granted under any set of facts that could be proved consistent with the allegation'" …*supra* at 1403

At this juncture, no discovery has been provided by RKC. No depositions have been taken nor have motions to produce been filed. Much discovery will be required. Appropriate notice of the plaintiffs' allegations have been given to RKC as required by F.R.C.P. 8.

**A.     POINT I**

**PLAINTIFFS' ADEQUATELY STATE A NEGLIGENCE
CLAIM AGAINST RKC**

**1.     Duty**

An accounting firm such as RKC is required to exercise "the skill and knowledge normally possessed by members of the profession" in rendering its services. *Wooler v. Fidelity Bank,* 479 A.2d 1027 (Pa.Super 1984). If it does not exercise the appropriate level of skill it will be required to pay appropriate damages if its negligence was a substantial factor in bringing about the plaintiff's loss. *Id.* Privity is required to maintain a cause of action for professional negligence. As the Supreme Court stated in *Landell v. Lybrand,* 107 A.2d 783 (Pa. 1919), there is no duty when the plaintiff is a "stranger" to the defendant accounting firm.

RKC is being disingenuous when it suggests that the plaintiffs were "strangers." In fact, the plaintiffs were clients of RKC. (See affidavit of William H. Steinbrink, M.D.) RKC prepared tax documents for the plaintiffs from 1994 through July 2001. It also provided tax advice directly to the plaintiffs. Although the general operating partner of Genesis Capital Fund, L.P. and Gamelan Capital Fund, L.P. was B. Hauptman and Associates, plaintiffs were required to pay a proportional share of RKC's expenses for performing the yearly audits. RKC communicated directly with the plaintiffs and provided them with tax advice. It stamped many of the documents provided to the plaintiffs with the notation "to be retained by client." Plaintiffs specifically adopt the affidavit of William H. Steinbrink, M.D. and incorporate the affidavit, together with Exhibits A through L which clearly demonstrate extensive contacts between RKC and the plaintiffs and clearly establish privity between the plaintiffs and RKC.

The plaintiffs recognize that privity must be established to maintain an action for professional negligence. As is evident, the affidavit of Dr. Steinbrink and the attached exhibits clearly demonstrate the existence of privity. Plaintiffs are entitled to have this court view the evidence in a light most favorable to them as the non-moving parties and all reasonable inferences must be accepted as true. The plaintiffs have not been given an opportunity to conduct appropriate discovery. The plaintiffs believe, and therefore aver, that discovery will readily establish the existence of a relationship between them and RKC so that a reasonable person would readily conclude that they were not "strangers." Any credibility determinations will, of course, have to be made by a jury.

RKC contends that it was a "stranger" to the plaintiffs; that there was no privity. In support of its argument, RKC cites this court's decision in *PNC Bank v. HMC, supra.* It also

5

cites *Wilder v. Williams,* 1989 WL 67821 (W.D.Pa. 1989) and *Pell v. Weinstein,* 759 F.Supp. 1107 (M.D. Pa. 1991). RKC's reliance upon these cases is seriously misplaced.

In *PNC Bank, supra.,* an accounting firm, Grant Thornton, was retained by Housing Mortgage Corporation to audit their financial statements. The intervenor-plaintiffs were various entities that alleged injury as the result of HMC mismanagement. The intervenor-plaintiffs had no relationship with Grant Thornton and did not even allege that they were in privity with Grant Thornton. Rather, they argued that their claim for negligent misrepresentation did not require privity. This court held that privity was still required unless "the professional becomes directly involved in an effort to market a product." *Id.* at 1407, citing *Eisenberg v. Gagnon,* 766 F.2d 770 (3rd Cir. 1985). This court did permit the intervenor-plaintiffs to sue Grant Thornton as third party beneficiaries of the contract between HMC and Grant Thornton. As is readily apparent, the facts in the case at bar differ substantially from those in *PNC Bank.* The Steinbrinks and Bayside were, in fact, clients of RKC. They paid a portion of RKC's fees and received correspondence directly from RKC. They were provided financial advice by RKC and relied upon that advice in filing their tax returns. Unlike the intervenor-plaintiffs in *PNC Bank,* the plaintiffs in the case at bar were in privity with RKC.

In *Wilder v. Williams, supra,* the plaintiffs brought suit against four members of an accounting firm which had prepared financial statements for a company being purchased by the plaintiff. The court held that a claim for professional negligence could only be brought by a party in privity with the defendants. The plaintiffs alleged no privity. In fact, there was no relationship between the plaintiffs and the accountants. A similar result was reached in *Pell v. Weinstein, supra.* As in *Wilder, supra,* the plaintiffs sought damages from accountants who had conducted audits of a company which the plaintiffs were purchasing. Plaintiffs did not

contend that they had a contractual relationship with the defendant accountants. The court held that no action for professional negligence could be maintained unless there was privity. As previously stated, the facts in these cases are substantially different from those in the case at bar. There was, in fact, a privity relationship between these plaintiffs and RKC.

Dr. and Mrs. Steinbrink and Bayside were not strangers to RKC. They were limited partners in Genesis and subsequently in Gamelan and services were provided directly to them in their capacity as limited partners. In *White v. Guarente,* 372 N.E. 2d 315 (N.Y. 1977) the Court of Appeals considered a similar case involving a limited partner. The court noted that the limited partnership retained the services of an accounting firm to perform audits and prepare tax returns. The court also noted that there were approximately 40 limited partners. The defendant accounting firm contended that there was no privity and that therefore plaintiff was precluded from bringing a cause of action against the firm. The Court denied the accounting firm's contention. The Court held unanimously that the case would commence. The court stated:

> Here, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components (see *Ultramares Corp. v. Touche*, 255 N.Y. 170, 182-185, 174 N.E. 441, 445-447, supra ). The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined. Here, accountant Andersen was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. *supra* at 318-19

See also *Haddon View Investment Co. v. Coopers & Lybrand,* 435 N.E.2d 212 (Ohio 1982) ("we conclude that the **limited partners** in the Car Wash **partnerships** constitute a **limited** class of investors whose reliance on the **accountant's** certified **audits** for purposes of investment strategy was specifically foreseen by defendant.") and *In Re: Phar-Mor, Inc. Securities*

*Litigation,* 892 F.Supp. 676, 690 (W.D.Pa. 1995) ("the facts establish a privity relationship because the defendant specifically undertook the engagement to supply information to the plaintiffs.")

There can be no doubt that the plaintiffs and RKC were in privity. They were limited partners, they paid a portion of RKC's bill, they relied upon the financial audits, they received statements directly from RKC, they relied upon RKC for tax advice and they relied upon RKC to carefully review the partnership for fraud and mismanagement. If one accepts RKC's assertion then the only one who could sue RKC for negligence would be the general partner - the precise individual who is the subject of the audits. It is highly doubtful that Mr. Hauptman would ever be inclined to bring an action against RKC for its failure to properly audit his mismanagement of the partnership.

## 2.    Causation

Plaintiffs certainly acknowledge that they are required to prove a causal connection between the negligent conduct of RKC and the damages which they sustained. In paragraph 13 of plaintiffs' complaint, plaintiffs allege that Bruce Hauptman provided the plaintiffs with the 1998 annual audit reports of Genesis and Gamelan as prepared by RKC knowing that the reports contained significant misrepresentations and material omissions. In paragraph 45 of plaintiffs' complaint, they outline the negligence and carelessness of RKC in preparing the audit and financial statements of Genesis and Gamelan. In paragraph 44 of their complaint, plaintiffs contend that they relied upon the audit and financial statements in making their investment decisions "relative to investing in the fund and relative to the continuation and addition to those

investments." In paragraph 47, they allege that as the direct and proximate result of the negligence and carelessness of RKC they sustained substantial financial injury.

The Federal Rules of Civil Procedure provide for notice pleading and RKC has been given appropriate notice as required by F.R.C.P. 8. The Motion to Dismiss should be denied.

### B.    POINT II and IV

Under Pennsylvania law the elements of negligent misrepresentation are:

(1)    A misrepresentation of material facts;

(2)    The representor must either know of the misrepresentation, must make the misrepresentation without knowledge of its falsity or must make the representation under circumstances in which he ought to know of its falsity;

(3)    The representor must intend the representation to induce another to act on it; and

(4)    Injury must result to the party acting in justifiable reliance on the misrepresentation.

***Bilt-Rite Contractors, Inc. v. The Architectural Studio,*** 866 A.2d 270, 277 (Pa. 2005) quoting ***Bortz v. Noon,*** 729 A.2d 555, 561 (Pa. 1999). Negligent misrepresentation is not the same as fraudulent misrepresentation. See ***Deverant v. Selective Insurance Company, Inc.,*** 2004 WL 1171333 (E.D. Pa. March 25, 2004). Fraudulent misrepresentation requires "a fraudulent utterance." Negligent misrepresentation requires no proof of fraud. As such, the particularity requirements of F.R.C.P. 9(b) do not apply. Rather, the notice requirements of F.R.C.P. 8 are applicable. The plaintiffs have provided sufficient notification to RKC at this juncture. The complaint is even sufficient for Rule 9 purposes although no such particularity is required. The particularities of the allegations will become much more focused as the discovery process ensues.

RKC again contends that the plaintiffs' negligent misrepresentation claim is barred due to lack of privity. As previously asserted, there existed a privity relationship between the plaintiffs and RKC. Moreover, it is respectfully averred that privity is not required to establish a claim of negligent misrepresentation. ***Borough of Lansdowne, Pennsylvania v. Sevenson Environmental Services,*** 2000 WL 1886578 (E.D. Pa. December 12, 2000) ("to conclude, we hold that contractual privity is not required to bring a claim for negligent misrepresentation.") and ***In Re: Intelligent Electronics, Inc., Securities Litigation,*** 1996 WL 304852 (E.D. Pa., June 6, 1996) ("for present purposes, however, I have concluded that Pennsylvania law does not require privity to maintain a negligent misrepresentation action against an accounting firm.") See also ***Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates,*** 39 F.Supp. 2d 517 (M.D. Pa. 1999).

Although some district courts have held to the contrary, (see e.g., ***PNC Bank, Kentucky, Inc. v. Housing Mortgage Corporation, supra.***) it is respectfully averred that that matter has been resolved by the Pennsylvania Supreme Court. ***Bilt-Rite Contractors, Inc. v. The Architectural Studio, supra.*** In ***Bilt-Rite Contractors, Inc., supra,*** the Supreme Court adopted Section 552 of the Restatement of Torts (2d) which sets forth the parameters of a duty owed when one "supplies information to others, for one's own pecuniary gain, or one intends or knows that the information will be used by others in the course of their own business activities." Section 552, which is entitled "Information Negligently Supplied for the Guidance of Others," provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

>(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
>(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

As the Supreme Court recognized, Section 552 is a subset of the common law tort of negligent misrepresentation. The Court further stated, "there is no requirement of privity in order to recover under Section 552", *supra* at 285.

In the case at bar, the plaintiffs have alleged that they were limited partners of Genesis and Gamelan. RKC was retained to conduct audits and provide financial statements relative to those partnerships. RKC acted in a negligent and careless manner and misrepresented numerous material facts relative to the operation and management of the funds. (See plaintiffs' complaint, para. 45 and 46). RKC is a professional accounting firm and was required to abide by appropriate standards of accounting. Had RKC performed its accounting function in a professional manner it would have known that the audits and financial statements were misleading and incomplete. The information was provided directly to the limited partners for their guidance in determining whether to continue, increase and/or decrease their investment. The plaintiffs were limited partners and RKC in fact corresponded directly with the plaintiffs, providing them with audits, financial statements and tax advice. The plaintiffs relied upon RKC's representations in making their investment decisions relative to continuing their investment in Genesis and transferring their Genesis investment to Gamelan. They suffered a severe financial loss as a result of their unwarranted reliance upon the misrepresentations of

RKC.  As the Supreme Court recognized in *Bilt-Rite Contractors, Inc., supra,* privity is not required to establish negligent misrepresentation and a Section 552 claim.  As previously stated, however, the plaintiffs contend that they were in privity with RKC.  They certainly were persons that RKC knew were being supplied the information for guidance in their investment decisions.  See comment h of Section 552.  The plaintiffs unquestionably contend in their complaint that RKC's negligently prepared reports caused them to invest in Gamelan and to continue to invest in Genesis.  These investment decisions, which were induced by the negligently prepared reports, resulted in the plaintiffs sustaining substantial financial loss.  Discovery will provide additional specifics and evidence.  The motion to dismiss should be denied.

## Causation

The plaintiffs have pled sufficient causation between their claims against RKC and their damages.  The plaintiffs assert that because of RKC's errors and omissions in the preparation of the annual audit reports of Genesis and the 1998 audit report of Gamelan, they sustained financial injury.  Specifically, because the plaintiffs relied upon the accuracy of the annual audit and financial reports concerning Genesis as well as the 1998 Gamelan report, they rolled their position in Genesis into Gamelan.  If RKC's audit reports for Genesis would have disclosed the true financial condition of Genesis, the plaintiffs would have never continued to maintain their position in Genesis let alone roll their funds into Gamelan.  Because of RKC's errors and omissions, the plaintiffs were ignorant of the mismanagement of both Genesis and Gamelan when they made their decision to role their funds from Genesis into Gamelan.  Their reliance was justified since they were paying RKC to report to them any irregularities or mismanagement by Hauptman of Genesis and Gamelan.

RKC claims there is no causation because it alleges, the essence of the plaintiffs' claim is that Hauptman defaulted on the withdrawal provisions in 2001 and therefore there is no causal connection between that act and any loss sustained. This is a false assertion. The simple fact is that the Steinbrinks would have opted out of Genesis had they known the true condition of Genesis let alone even consider rolling their funds into Gamelan. RKC's failure to report Hauptman's mismanagement of both Genesis and Gamelan in the annual financial reports and in the documentation sent to the Steinbrinks allowed Hauptman to take advantage of them.

The actual financial loss sustained by the Steinbrinks will have to be ascertained during discovery once documents have been produced and depositions taken that will establish the true value of the Steinbrinks' position in Genesis and the true value of what their position was in Gamelan in 2001 when they discovered the errors and omission in the financial reports of both Genesis and Gamelan. As Dr. Steinbrink indicates in his affidavit, if they would have known the true financial condition of Genesis, they would not have continued their position in Genesis let alone rolled that position into Gamelan as a result of RKC's errors and omissions. They sustained serious financial injury that they would have not otherwise have sustained if RKC would have lived up to its obligation to inform *its clients* of the mismanagement of Genesis and Gamelan by Hauptman.

RKC repeatedly contends that greater specificity is required, citing F.R.C.P. 9. Negligent misrepresentation has no fraud requirement. As such, the notice provisions of Rule 8 are applicable. In *Phelps v. N. Kapnolas*, 308 F.3d 180, 186 (2nd Cir. 2002), the Court summarized the requirements and rationale for notice pleading:

> As the Supreme Court has recently had occasion to remind us, a complaint adequately states a claim when it contains " 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 995, 152

13

L.Ed.2d 1 (2002) (quoting FRCP 8(a)(2)); *see also* **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,** 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim," *Swierkiewicz,* 122 S.Ct. at 999, and which "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 998. Thus, a complaint is sufficient if it gives " 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Id.* (quoting *Conley,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment. *Phelps, supra,* at 186-187

## CONCLUSION

The defendant RKC's Motions to Dismiss Counts 4 and 5 are meritless. The motion should be denied.

                                        Respectfully submitted,

                                        **AMBROSE, FRIEDMAN and WEICHLER**

                                        s/  Leonard G. Ambrose III
                                          Leonard G. Ambrose III, Esquire
                                          Attorney for Plaintiffs
                                          319 West 8th Street
                                          Erie, Pennsylvania  16502
                                          814/452-3069
                                          Supreme Court I.D. # 18824