IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| WILLIAM H. STEINBRINK, M.D. and PATRICIA M. STEINBRINK, his wife,<br><br>and<br><br>BAYSIDE OBSTETRICS GYNECOLOGY INFERTILITY, INC. 401(k) PROFIT SHARING PLAN,<br><br>Plaintiffs<br><br>v.<br><br>ROTHSTEIN, KASS & COMPANY, P.C.;<br>B. HAUPTMAN & ASSOCIATES, LLC;<br>BRUCE A. HAUPTMAN,<br><br>Defendants | CASE NO. CA 01-382 - Erie<br><br>Filed Electronically |

### AFFIDAVIT OF WILLIAM H. STEINBRINK, M.D. IN RESPONSE TO RKC'S MOTION TO DISMISS

COMMONWEALTH OF PENNSYLVANIA   :
                                ss
COUNTY OF ERIE                  :

1. My name is William H. Steinbrink, M.D. I am one of the plaintiffs along with my wife, Patricia M. Steinbrink and Bayside Obstetrics Gynecology Infertility, Inc. 401(k) Profit Sharing Plan in the above action against Rothstein, Kass & Company, P.C. ("RKC").

2. I was a client of RKC from 1994 through July 2001. During this time period, RKC prepared tax documents for both myself and my wife as well as "Bayside." RKC has also provided me as well as my wife and Bayside with tax advice as to how certain gains and/or

losses should be treated for tax purposes on my 1040 tax return which I filed jointly with my wife for the time period of 1994 through 2001.

3.  From 1994 through December 13, 1999, I and my wife as well as "Bayside" were limited partners in Genesis Capital Fund, L.P. ("Genesis Capital") which was a limited investment partnership. The general operating partner was B. Hauptman and Associates. As a limited partner, I was required to pay a proportional share of RKC's expenses for performing yearly audits, preparing Internal Revenue Partnership Returns Form 1065 for each of the years 1994 through 1999 as well as preparation of our individual K-1 forms which were provided to my wife and myself. The K-1 Forms which were prepared by RKC and addressed to both my wife and myself were in turn given to our accountant for the preparation of our joint 1040 tax returns which I filed with my wife with the IRS for the years 1994 through 1999. In addition, RKC provided tax advice as to how gains and/or losses should be treated by myself and Bayside and cited specific sections of the Internal Revenue Code, as amended, as well as Treasury Regulations which they believed supported their opinions regarding the proper tax treatment of items of income and/or losses for each of the years in question. Further, in each of the opinion letters I was given the name of an RKC employee and a telephone number and was advised that if I had any questions that I should feel free to contact them for further explanation. This tax advice information was also provided to my accountant and used along with the K-1s prepared by RKC in preparing my 1040 tax returns for the years 1994 through 1999.

4.  Specifically, RKC provided me with a yearly audit report of the financial activities of Genesis Capital. I paid my proportional share of RKC's fees as per the offering memorandum and in turn, RKC prepared our individual K-1s reflecting any gain or loss as well as an accompanying letter providing tax advice with supporting references. These documents

were sent directly to me by RKC stamped with the notation, **"*to be retained by client.*"** In support, I have attached hereto the following exhibits as reflective of my client relationship with RKC from 1994 through July 2001. See the following Exhibits.

**Exhibit A** - Letter dated April 7, 1995, from RKC to Steinbrinks regarding Genesis Capital Fund. Said letter begins by stating: "Attached is a copy of Schedule K-1, Form 1065 which lists *your distributive share* of the partnership's taxable income (loss) for the year ended December 31, 1994." The letter goes on to provide tax advice to the Steinbrinks and further provides that if Dr. Steinbrink had any questions, the name of the RKC contact persons he could contact regarding said tax advice. See p. 3. Also attached is the instructions from RKC to the Steinbrinks regarding their K-1 as prepared RKC for 1040 filers.

**Exhibit B** - Letter dated December 20, 1995, addressed to Dr. William and Mrs. Patricia Steinbrink, 122 Columbia Circle, Erie, PA 16505, re Genesis Capital Fund wherein RKC informs the Steinbrinks as to their estimated share of taxable income and/or expense through November 30, 1995. Further, the correspondence concludes by stating that during 1996 we will send your Schedule K-1 needed for the preparation of your 1995 income tax returns.

**Exhibit C** - Letter dated April 10, 1996, from RKC to Steinbrinks regarding Genesis Capital Fund which includes Schedule K-1, From 1065 prepared by RKC for the Steinbrinks along with tax advice regarding treatment of income items.

**Exhibit D** - Letter dated December 17, 1996, addressed to Dr. William and Patricia Steinbrink, 122 Columbia Circle, Erie, Pennsylvania 16506 reflecting calculation by RKC regarding their estimated share of taxable income and/or expense in Genesis through September 30, 1996. Further directions that during 1997, RKC will prepare for the Steinbrinks their Schedule K-1 as needed for the preparation of 1996 income tax returns.

**Exhibit E** - Letter dated April 10, 1997, from RKC to the Steinbrinks enclosing their Schedule K-1, Form 1065 wherein RKC calculates the distributive share of their taxable income and/or loss for the year ended December 31, 1996. Further, RKC provides tax advice to the Steinbrinks regarding treatment of items of income. The letter concludes by providing the identity of RKC contact employees if the Steinbrinks had any questions.

**Exhibit F** - Copy of FedEx package sent by RKC enclosing April 10, 1997 correspondence, K-1 and Form 1065 from RKC addressed to Dr. William H. Steinbrink and Steinbrink, Finn and Associates, Inc., 122 Columbia Circle, Erie, Pennsylvania.

**Exhibit G** - Letter dated December 18, 1998, from RKC addressed to Dr. William and Mrs. Patricia Steinbrink, 1608 South Shore Drive, Erie, Pennsylvania 16505, regarding RKC's estimation of their share of taxable income or expense in Genesis through September 30, 1998. Said letter concludes by stating during 1999 they will prepare the Steinbrinks' Schedule K-1 so they may use those calculations for the preparation of their 1998 federal income tax returns.

**Exhibit H** - Letter dated April 9, 1999, from RKC to Steinbrinks regarding Genesis Capital Fund enclosing Schedule K-1, Form 1065 listing their distributive share of the partnership taxable income and/or loss for the year ended December 31, 1998 as well as tax advice as to how items should be handled for tax purposes by their tax preparer. Stamped on the face of the April 9, 1999 letter from RKC to Steinbrinks in bold capital print is the logo, *"This copy to be retained by client."*

**Exhibit I** - Letter dated December 17, 1999 from RKC addressed to Dr. William and Mrs. Patricia Steinbrink, 1608 South Shore Drive, Erie, PA 16505, wherein RKC estimates the Steinbrinks' share of taxable income and/or expense through September 30, 1999 for Genesis

4

Capital Fund. The letter concludes by stating that during 2000, RKC will prepare the Steinbrinks' Schedule K-1 as needed for the preparation of their 1999 federal income tax returns.

**Exhibit J** - Letter dated April 8, 2000, to the Steinbrinks regarding Genesis Capital Fund and a prepared Schedule K-1 as well as a Form 1065 which lists their distributive share of Genesis's taxable income or loss for the year ended December 31, 1999. Further, RKC provides the Steinbrinks with tax advice as to how income items and/or losses should be treated on their 1999 tax return.

**Exhibit K** - Letter dated March 29, 2000, from RKC to the Steinbrinks regarding Gamelan Capital Fund. Enclosed was the Schedule K-1, Form 1065, which was prepared by RKC for the Steinbrinks listing their share of the partnership's taxable income and/or loss for the year ended December 31, 1999. The names of the RKC contact employees are also provided to the Steinbrinks.

**Exhibit L** - Letter dated March 27, 2001 from RKC to the Steinbrinks enclosing a copy of the Schedule K-1, Form 1065, prepared by RKC. Tax advice is provided to the Steinbrinks regarding how items of income should be treated on their 2000 income tax returns. The names of the RKC contact employees are provided to the Steinbrinks in said correspondence.

5.  In the Fall of 1999, Hauptman flew to Erie and made a presentation to myself at the Bel Aire Hotel in Erie, Pennsylvania, regarding his desire to roll my interest in Genesis into Gamelan, Inc. RKC's previous audits of Genesis did not disclose that as a limited partner of Genesis I already had an interest in Gamelan since Gamelan was one of the investments of Genesis. Hauptman presented Gamelan as a new concept and used the 1998 Gamelan audit report to support his claims. I was never told by Hauptman or RKC that I was already an investor in Gamelan due to my position in Genesis. I relied upon RKC's audits and

representations concerning Genesis and Gamelan in ultimately making my decision on December 13, 1999 to roll my position in Genesis into Gamelan.[1] I did not discover RKC's professional errors and omissions in preparing the financial audits and related documents of Genesis and Gamelan until 2001. In 2001, after several unsuccessful attempts to withdraw funds from Gamelan, I was forced to retain counsel to obtain documentation from Hauptman and his counsel concerning the operation and management of both Genesis and Gamelan. It was at this time that I first learned of RKC's significant errors and omissions in the preparation of the yearly audits of Genesis and Gamelan. By that time, I had suffered significant financial damage due to my reliance upon the financial statements of Genesis and Gamelan.

6. As a result of rolling our funds from Genesis into Gamelan, my wife, myself and Bayside became the owner of approximately Forty (40%) percent of Gamelan. Pursuant to the limited partnership agreement, Article IV, Section 4.3, "Expenses" Sections (b) (VI), (VII) and (IX), we were required to pay a proportional share of RKC's fees. Since we had acquired ownership of approximately Forty (40%) percent of Gamelan, we were required to pay Forty (40%) percent of RKC's fees for performing the yearly audits on Gamelan, preparation of financial documents, preparation of Form 1065 partnership returns, as well as K-1s. Further, RKC sent directly to my residence, audit reports of Gamelan, copies of 1065 partnership returns filed with the Internal Revenue Service as well as our individual K-1 forms. The 1065 forms as well as our K-1s were provided to our tax preparer along with any documents containing tax advice for preparation of our joint federal and state income tax returns for the years 1999 and 2000.

---

[1] Unbeknownst to me, prior to December 13, 1999 Hauptman had unilaterally and without our consent rolled our funds into Gamelan.

7. RKC has never provided free services to me, my wife or Bayside. We have always paid a proportional share of RKC's fees as charged to either Genesis or Gamelan consistent with the extent of our financial interest in Genesis and later Gamelan.

8. Being unaware of RKC's professional errors and omissions, I relied on the accuracy and completeness of the financial documents and/or information provided by RKC. These errors and omissions caused me and my wife, as well as Bayside, to lose in excess of $5 Million Dollars in our investments in both Genesis and Gamelan.

9. If I would have been made aware of the true financial condition of both Genesis and Gamelan, I would not have continued to maintain my investments in the funds nor would I have agreed to roll my investments from Genesis into Gamelan.

10. Because I was paying a substantial portion of RKC's fees in performing yearly audits of Genesis and Gamelan, I expected RKC to act in my best interests and report either in the yearly audit report or in other documentation which RKC sent directly to my residence, any mismanagement of Genesis and Gamelan by Hauptman.

William H. Steinbrink, M.D.

Sworn to and subscribed before
me this 22nd day of January, 2007.

Karen A. Lombardo

NOTARIAL SEAL
KAREN A. LOMBARDO, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNA.
MY COMMISSION EXPIRES ON JAN. 8, 2010

7