IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM H. STEINBRINK, M.D. and )
PATRICIA M. STEINBRINK, his wife, )
and )
)
BAYSIDE OBSTETRICS )
GYNECOLOGY INFERTILITY, INC. )
401(k) PROFIT SHARING PLAN, )
)
   Plaintiffs, )
)
   v. )   Civil No. 01-382 Erie
)
ROTHSTEIN, KASS & COMPANY, )
P.C., )
)
   Defendant. )

## Opinion

Presently before the Court are Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50), Defendant's Motion to Dismiss for Failure to File a Certificate of Merit (Docs. 66/68), and Plaintiffs' Motion for Discovery (Limited) (Doc. 56). For the reasons stated below, we will grant Defendant's motion to dismiss for failure to state a claim and deny Defendant's motion to dismiss for failure to file a certificate of merit. We will also deny Plaintiffs' motion for limited discovery.

## I. Background

Plaintiffs William H. Steinbrink, M.D., his wife Patricia M. Steinbrink, and Bayside Obstetrics Gynecology Infertility, Inc. 401(k) Profit Sharing Plan originally commenced this action against eight Defendants involved in managing or auditing investment partnerships in which the Plaintiffs had invested and subsequently lost their investment. During the course of this action several claims and defendants have been dismissed. When Plaintiffs filed their Second Amended

Complaint on October 16, 2006, they asserted seven claims against three Defendants. Subsequently, Plaintiffs voluntarily moved to dismiss five of the seven claims, resulting in two Defendants being dismissed. Thus, Plaintiffs' action now consists of two common law claims of negligence and negligent misrepresentation asserted against the sole remaining Defendant, Rothstein, Kass & Company, P.C. ("RKC").

William H. Steinbrink, M.D. is a board-certified obstetrician/gynecologist in Erie, Pennsylvania, and Patricia M. Steinbrink is his wife. Plaintiff Bayside Obstetrics Gynecology Infertility, Inc. 401(k) Profit Sharing Plan is Dr. Steinbrink's qualified 401(k) profit sharing plan under the Employees Retirement Income Security Act. RKC is a professional corporation that provides, among other things, auditing services to investment companies.

Plaintiffs' investments were managed through former Defendants B. Hauptman & Associates, LLC ("BHA"), an investment management consulting firm, and former Defendant Bruce A. Hauptman, the President of BHA. The two investment partnerships at issue in this litigation are the Genesis Capital Fund, L.P. ("Genesis"), and the Gamelan Capital Fund, L.P. ("Gamelan"). Plaintiffs were limited partners in Genesis and first invested in the Genesis fund in 1990. An entity called Genesis Management was the general partner of Genesis; Georgica Pond, Ltd. was the general partner of Genesis Management; and former defendant Hauptman was the president of Georgica Pond.

Because of the lack of performance of the Genesis fund, Plaintiffs informed Hauptman in 1999 that they wanted to withdraw from the Genesis fund. Hauptman suggested that the Plaintiffs transfer their Genesis funds into his new fund named Gamelan.

Plaintiffs stated to Hauptman that they would only consider transferring their Genesis funds to Gamelan if the withdrawal provisions of Gamelan permitted them to withdraw funds from Gamelan on a quarterly basis. Plaintiffs insisted on a written amendment to the Gamelan Partnership Agreement, but Hauptman preferred that they rely upon his oral representations. The parties negotiated this issue from October 1999 through December 1999. Eventually, Hauptman

2

provided Plaintiffs with a letter dated December 13, 1999, which stated that he agreed that Plaintiffs would have the right to withdraw funds from Gamelan on a quarterly basis, so long as 30 days written notice was provided. Plaintiffs executed the Subscription Agreements for the Gamelan fund sometime after December 13, 1999. As a result, Plaintiffs invested $6,654,908.00 into the Gamelan fund, while the Steinbrink 401(k) Plan invested $1,292,379.00 into the fund. Plaintiffs also became limited partners in the Gamelan fund. The managing general partner of the Gamelan fund was BHA, and Hauptman was the president of BHA.

Plaintiffs alleged that from the time Hauptman first suggested that they transfer their funds from Genesis to Gamelan, Hauptman undertook various actions and omissions designed to convince Plaintiffs to transfer their funds. Specifically, Plaintiffs allege that Hauptman provided them with the 1998 annual audit reports of both Genesis and Gamelan, performed by the auditing firm of Defendant RKC. According to Plaintiffs, Hauptman knew that these reports contained significant misrepresentations and material omissions, but that Hauptman provided the reports in order to induce Plaintiffs to invest in Gamelan

Hauptman requested that Plaintiffs backdate the Gamelan Subscription Agreements to October 1, 1999, which the Plaintiffs did. However, unbeknownst to Plaintiffs, Hauptman had already converted the Plaintiffs' investments in the Genesis fund into the Gamelan fund on October 1, 1999, without Plaintiffs' knowledge or permission.

Beginning in 2001, Plaintiffs sought to discover the entities in which the Gamelan fund had invested their funds, but Hauptman refused to divulge this information. Plaintiffs allege that Hauptman refused to provide Plaintiffs with this information in order to prevent them from finding out the true nature of the Gamelan fund's investments, as well as Plaintiffs' proportional share of these investments. In 2001, Plaintiffs also notified Hauptman several times in writing that they wanted to withdraw significant funds from Gamelan. The Gamelan fund did not remit the requested funds.

3

RKC was retained by BHA to conduct annual audits of the Genesis and Gamelan funds. Plaintiffs allege that RKC acted in a negligent and careless manner in preparing the audit and financial statements of Genesis and Gamelan. Plaintiffs allege that RKC's negligent conduct consisted, in part, of the failure to perform its audits in compliance with generally accepted accounting standards; the failure to disclose fraudulent activities and mismanagement of Hauptman and BHA; and the failure to disclose a scheme of buying and selling shares of a wholly owned subsidiary of USA Global Link, Inc., named Online India, Inc., for the purpose of artificially inflating the value of the Gamelan fund's investment in USA Global. Plaintiffs further allege that RKC 's failure to disclose irregularities, self-dealing, fraud, and mismanagement of Genesis and Gamelan and to appropriately modify its audit reports deprived Plaintiffs of material information.

In its negligent misrepresentation claim, Plaintiffs allege that RKC negligently misrepresented the true condition and valuation of Genesis and Gamelan by failing to disclose irregularities, self-dealing, fraud, and mismanagement of Genesis and Gamelan in its audit reports and financial statements. Plaintiffs also allege that this failure by RKC deviated from professional standards of care.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule 12(b)(6), tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing *Conley*, 355 U.S. at 45-46); see also Wisniewski v. Johns- Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping

4

legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977).

## III. Discussion

RKC argues pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiffs have failed to state claims of negligence and negligent misrepresentation because RKC owed no duty to Plaintiffs as a matter of law. In this regard, RKC argues that Pennsylvania's strict privity rule with respect to accounts bars such claims.

Alternatively, RKC argues that Plaintiffs fail to state a claim of negligence because they are unable to show a causal connection between RKC's alleged failure to discharge its duty and Plaintiffs' damages. In addition, RKC argues that Plaintiffs' negligent misrepresentation claim should also be dismissed for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Finally, RKC argues in its supplemental motion that Plaintiffs have failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 requiring the filing of a Certificate of Merit in any case alleging that a licensed professional deviated from an acceptable professional standard.

### A. Negligence

RKC argues that Plaintiffs have failed to state a claim of negligence because Plaintiffs cannot show that RKC owed a duty to Plaintiffs.

"The Pennsylvania Supreme Court requires privity between a plaintiff and a defendant-accountant to maintain a professional negligence action." Williams Controls Inc. v. Parente, Randolph, Orlando, Carey & Associates, 39 F. Supp.2d 517, 523 (M.D. Pa. 1999), citing Landell v. Lybrand, 264 Pa. 406, 107 A. 783 (1919); *see also* PNC Bank, Kentucky, Inc. v. Housing Mortgage Corp., 899 F.Supp. 1399, 1406 (W.D.Pa. 1994) ("it is still the law in Pennsylvania that an action for professional negligence may not be maintained absent privity of contract between the parties", *citing* Pell v. Weinstein, 759 F.Supp. 1107, 1119 (M.D.Pa.1991) and Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983); and Tredennick v. Bone, 2007 WL 4244652 (W.D.Pa. Nov. 29,

5

2007) ("it is well-settled that an action for professional negligence cannot be maintained unless there is privity of contract between the parties").

We agree that Plaintiffs were not in privity with RKC. Plaintiffs did not engage RKC to provide auditing services to them, they did not submit any fees directly to RKC for any services, and there is no contract between Plaintiffs and RKC. The engagement letter between RKC and BHA does not mention Plaintiffs, and the text of the engagement letter shows that BHA contracted for, among other things, RKC to provide audit reports, correspondence, and tax information to the partners. (Declaration of Raymond K. Obssuth (Doc. 65), and attached Engagement Letter, December 5, 1997.) At best, Plaintiffs Second Amended Complaint purports to state a claim of negligence against RKC because Plaintiffs were intended beneficiaries of the audit reports prepared by RKC.

Apparently, Plaintiffs realized that their negligence claim would be dismissed for lack of privity, even if they claimed they were the intended beneficiaries, so instead Plaintiffs claimed in their Response Brief that they were in fact clients of RKC. (Plaintiffs' Brief in Opposition, at 5.) However, they are unable to overcome the record evidence that shows that RKC only contracted with BHA, and their argument otherwise is contrary to well-established Pennsylvania law regarding strict privity. We find that Plaintiffs have "failed to establish that [RKC] engaged in any specific undertaking to perform any specific service for [them] as required to maintain a claim for professional negligence in Pennsylvania.." Tredennick, 2007 WL 4244652, *4. Accordingly, Plaintiffs' claim of professional negligence will be dismissed for lack of privity.

### B. Negligent Misrepresentation

Lack of privity also requires dismissal of Plaintiffs' negligent misrepresentation claim. RKC argues Plaintiffs' negligent misrepresentation claim is in essence a professional negligence claim. We agree. Plaintiff's claim, "although couched in terms of negligent misrepresentation, clearly involves the alleged breach by [RKC] of its obligation to perform audits of [Genesis and Gamelan's] financial statement[s] according to Generally Accepted Auditing Standards." PNC Bank, Kentucky,

6

899 F.Supp. at 1407. "This is the very heart of a professional negligence claim." Id. As discussed, Pennsylvania requires privity to maintain a professional negligence action. Since Plaintiffs are not in privity with RKC, their negligent misrepresentation claim must also be dismissed.

We are aware that "Pennsylvania would recognize an exception to the privity requirement where the professional becomes directly involved in an effort to market a product." PNC Bank, Kentucky, 899 F.Supp. at 1407, citing Eisenberg v. Gagnon, 766 F.2d 770, 779 (3d Cir.), *cert. denied sub nom.*, Wasserstrom v. Eisenberg, 474 U.S. 946 (1985) (see also In re Phar-Mor, Inc. Sec. Litig., 892 F.Supp. 676, 692-694 (W.D.Pa. 1995). However, "where the professional does not have a direct involvement in a transaction, but issues an opinion which is then used by the party which does have a direct interest in the sale" the exception to the privity rule would not apply. PNC Bank, Kentucky, at 1408. Otherwise, the mere pleading of negligent misrepresentation would allow those not in privity to avoid the privity rule by recasting a professional negligence claim as a negligent misrepresentation claim, "even where the underlying negligence alleged is the failure to conform to professional standards owed to persons in privity." Id.

However, Plaintiffs do not argue that an exception to the privity rule applies in this case. Instead they argue that privity is no longer required in negligent misrepresentation claims in Pennsylvania because Pennsylvania has adopted section 552 of the Restatement of Torts (2d). (Plaintiffs' Brief in Opposition, at 10-11, citing Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005).)

Bilt-Rite involved a negligent misrepresentation claim asserted by a contractor against an architect. However, Bilt-Rite does not extend to cases of professional negligence asserted against accountants. The Pennsylvania Supreme Court framed the issue as follows:

> whether a building contractor may maintain a negligent misrepresentation claim against an architect for alleged misrepresentations in the architect's plans for a public construction contract, where there was no privity of contract between the architect and the contractor, but the contractor reasonably relied upon the misrepresentations in submitting its winning bid and consequently suffered purely economic damages as a result of that reliance.

Bilt-Rite, 866 A.2d at 272. In Bilt-Rite the school district contracted with the architect for services

7

that "included the preparation of plans, drawings and specifications to be submitted to contractors for the purpose of preparing bids for the construction of the new school." Id. The Pennsylvania Supreme Court further explained that it granted review, in part, because "the question of the viability of a negligent representation tort action in the *architect/contractor/no privity scenario* is one of first impression for this Court." Id. at 274 (emphasis added). In adopting Section 552, the Court stated as follows:

> [W]e see no reason why Section 552 should not apply to architects and other design professionals. The rationale for this application was persuasively set forth by the Court of Appeals of North Carolina in Davidson, where the court stated that such a duty to foreseeable third parties flows from the architect's contractual duties to the party retaining the architect, an approach we embrace:
>
>> An architect, in the performance of his contract with his employer, is required to exercise the ability, skill, and care customarily used by architects upon such projects. . . . Where breach of such contract results in foreseeable injury, economic or otherwise, to persons so situated by their economic relations, and community of interests as to impose a duty of due care, we know of no reason why an architect cannot be held liable for such injury. Liability arises from the negligent breach of a common law duty of care flowing from the parties' working relationship. Accordingly, we hold that an architect in the absence of privity of contract may be sued by a general contractor or the subcontractors working on a construction project for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner.

Bilt-Rite, 866 A.2d at 286, quoting Davidson and Jones, Inc. v. County of New Hanover, 255 S.E.2d 580, 584 (N.C.App. 1979) (citation omitted).

Reviewing the language of Bilt-Rite shows that the Pennsylvania Supreme Court focused on potential defendants being "architects and other design professionals." Subsequent cases have also read Bilt-Rite to apply narrowly to architects and other design professionals. Hults v. Allstate Septic Systems, LLP, 2007 WL 2253509, *9 (M.D.Pa. Aug. 3, 2007) (the "holding in Bilt-Rite does not appear to have been intended to extended beyond the parameters set forth by the Pennsylvania Supreme Court, namely to negligent misrepresentation cases involving those individuals who are in the business of providing information for use by third parties, such as architects and design professionals"); Carson/DePaul/Ramos v. Driscoll/Hunt, 2006 WL 2009047, *9 n.31 (Pa.Com. Jun

8

29, 2006) (reading Bilt-Rite as limited to design professionals); Colacicco v. Apotex, Inc., 432 F.Supp.2d 514, 543 n.25 (E.D.Pa. 2006) ("Court understands Bilt-Rite to have a narrower holding, adopting § 552 of the Restatement of Torts (Second) only as it applies to 'architects and other design professionals.'"); Rock v. Voshell, 2005 WL 3557841, *1 (E.D.Pa. Dec 29, 2005) (Bilt-Rite is narrow holding applying only to architects and design professionals)).

Therefore, the rule of Bilt-Rite does not extend to claims of professional negligence asserted against an accountant-defendant. Because of Pennsylvania's privity rule, a negligent misrepresentation claim may not be used to plead a professional negligence claim by persons not in privity with the accountant-defendant. Accordingly, since Plaintiffs are not in privity with RKC, we will grant RKC's motion to dismiss with respect to the negligent misrepresentation claim.

## IV. Conclusion

As set forth in the Opinion, we will grant RKC's motion to dismiss Plaintiffs' claims of professional negligence and negligent misrepresentation for failure to state a claim upon which relief can be granted because Plaintiffs are not in privity with RKC. We will also deny Plaintiffs' motion for limited discovery, and RKC's motion to dismiss for failure to file a certificate of merit.

An appropriate Order follows.

March 19, 2008
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.,
Senior District Judge

cc: counsel of record